18613

Ivory KENNEDY, Respondent, v. Raymond CARTER, John L. Paden, Green Valley Country Club, and one 1960 Ford Ranch Wagon, of whom Raymond Carter is the Appellant.

(153 S. E. (2d) 312)

*Ernest J. Howard, Esq.,* of Greenville, *for Appellant,*

*Messrs. Mann, Foster, Johnston & Ashmore* and *Harry A. Chapman, Jr.,* of Greenville, *for Respondent,*

March 2, 1967.

Moss, Chief Justice:

Ivory Kennedy, the respondent herein, instituted this action to recover damages for personal injuries alleged to

have been sustained by reason of the joint and several reckless, willful and unlawful acts and omissions of John L. Paden and James Allen Carter, the driver of an automobile owned by Raymond Carter, the appellant herein.

The action arose out of an accident which occurred at approximately 1:15 o'clock A. M. on August 5, 1964, on a frontage road of Highway I-85 in Greenville County. The respondent was riding as a passenger in an automobile driven by James Allen Carter, son of the appellant; it being admitted that said automobile was owned and maintained by him for family uses and purposes. In the unverified complaint of the respondent it was alleged that the automobile in which he was riding as a passenger swerved to the right and skidded several hundred feet into a highway sign. It is conclusive from the record that the defendant Paden, while under the influence of alcoholic beverages, was driving his automobile at a high, dangerous and unlawful rate of speed to the left of the center line of the highway and in the lawful lane of traffic reserved to the use of James Carter and the respondent. The respondent alleged in his complaint that the defendant Paden failed to keep a proper lookout and failed to keep his automobile under proper control. Assigned as specific allegations of negligence and recklessness on the part of the appellant in the operation of his vehicle were the following acts and omissions: (1) excessive speed; (2) failure to keep a proper lookout; and (3) failure to maintain proper control. The appellant, in his answer, denied any negligent, reckless, willful and unlawful acts and omissions on his part and asserted that the respondent was riding as a guest in his automobile, as defined in Section 46-801 of the Code.

The case came on for trial before The Honorable James H. Price, Jr., Judge of the Greenville County Court, and a jury, on November 1, 1965. At appropriate stages of the trial the appellant moved for a nonsuit and directed verdict. These motions were refused and the case submitted to the jury, which returned a verdict in favor of the respondent

against the appellant and John L. Paden for actual and punitive damages. Following the verdict, the appellant made a motion for judgment *non obstante veredicto* upon the same ground as his previous motions for nonsuit and directed verdict, such being that the respondent was a guest passenger in appellant's automobile and the evidence was insufficient to show recklessness and willfulness necessary to impose liability under the guest statute. The motion was refused and this appeal followed.

It is conclusive from the record that at the time the accident occurred the respondent was a guest passenger in the automobile of the appellant. Section 46-801 of the Code restricts liability for injury suffered by a guest passenger to cases where such has resulted from either intentional or reckless misconduct of the owner or operator of the motor vehicle. This court has held that the only duty that the operator of an automobile owes to a guest passenger is not to injure him willfully or by conduct in reckless disregard of his rights. Under such statute, a guest cannot recover against the owner or operator of an automobile for simple negligence. *Elrod v. All,* 243 S. C. 425, 134 S. E. (2d) 410. Under the guest statute intentional or reckless misconduct of the owner or operator of a motor vehicle is not actionable unless it is either a proximate or a concurring proximate cause of the injury complained of, and may be deemed such a cause only when without such intentional or reckless misconduct the injury would not have occurred or could have been avoided. Hence, the burden was upon the respondent to establish the intentional or reckless misconduct of the owner or operator of the motor vehicle in at least one of the specifications alleged in his complaint, and that such was a proximate or a concurring proximate cause of the injury sustained by the respondent. *Gunnels v. Roach,* 243 S. C. 248, 133 S. E. (2d) 757.

It is a well established rule of law in passing upon the exceptions of the appellant to the refusal of the trial judge to grant his motions for a nonsuit, di-

rected verdict and judgment *non obstante veredicto*, it is incumbent upon this court to view the evidence and the inferences fairly deducible therefrom in the light most favorable to the respondent. If more than one reasonable inference can be drawn from the evidence the case must be submitted to the jury. However, if the evidence is susceptible of only one reasonable inference, the question is no longer one for the jury but one of law for the court. *Warren v. Watkins Motor Lines,* 242 S. C. 331, 130 S. E. (2d) 896.

Prior to the accident involved in this case, the appellant had gone to the home of the respondent to pick him up so that they could go to the Ghana Motel in accordance with plans they had made earlier in the day. The Ghana Motel is located on a frontage road which runs parallel to Highway I-85. The frontage road is a two lane asphalt roadway with a center line and yellow lines at periodic points. This road is not a level one but between the Ghana Motel and the place of the accident there are several knolls or hills. A few minutes before the accident occurred, the appellant and the respondent left the Ghana Motel and were on their way home, proceeding in a westerly direction on the frontage road. A 1960 Ranch Wagon driven by John L. Paden was proceeding in an easterly direction on the frontage road toward the Ghana Motel. Paden had five passengers in the Ranch Wagon he was driving, four of whom testified in behalf of the respondent.

The testimony shows that the automobile driven by James Allen Carter was proceeding along the frontage road and met the Ranch Wagon driven by Paden at the crest of a hill. The four passengers in the Ranch Wagon testified that Paden had been drinking and was "half drunk" or "high" at the time he was meeting the automobile driven by Carter. They further testified that Paden was driving his automobile in such a manner as to cause it to weave back and forth from one lane of the road to the other and that as his automobile approached the crest of the hill it was to the left of the center line and in the lane of

travel in which Carter was lawfully driving. The testimony of all the witnesses who were occupants of the respective cars was that because of the hill the headlights from the cars approaching each other could not be seen but the glow of the lights could be seen. The two vehicles were not in full view of each other until they reached the crest of the hill and the witnesses agree that at that time the vehicles were from a half car length to a car length and a half from each other. At that time Paden was driving his automobile in the wrong lane of traffic and Carter was driving in the proper lane. When the cars were meeting at the crest of the hill one of the passengers in the Paden automobile grabbed the steering wheel and turned the car to the right and at the same time Carter turned his automobile to his right and it went off the road and down an embankment, striking a sign, resulting in damage to the automobile and injury to the respondent.

The trial judge in his order refusing the appellant's motion for judgment *non obstante veredicto* held that the Carter automobile "had to leave the road in order to avoid colliding head-on with an automobile operated by the defendant Paden" on the respondent's and appellant's side of the road. The parties to this appeal agreed in the statement of the case that this was true. All of the witnesses, including the respondent, who were passengers in the respective automobiles so testified. Confirmatory of the foregoing is the testimony given by the respondent with reference to Carter turning off of the road.

"Q. * * * if he had not turned off of that road, you would have hit that station wagon head-on wouldn't you?

"A. Definitely, yes, sir; head-on."

It is the position of the appellant that the evidence in this case was insufficient to show any actionable reckless, willful or intentional conduct on his part which operated either as a concurring or a proximate cause of the injury to the respondent. The testimony of the respondent exonerates the

appellant of any such conduct. We quote from such testimony:

"Q. Do you know how fast you were going immediately prior to the accident?

"A. Well, I couldn't say; but I'll say a good estimate maybe about fifty-five or sixty miles an hour.

"Q. All right. Were you on your proper side of the road prior to the accident?

"A. Yes, sir."

\* \* \*

"Q. About how far in front of you would you say this automobile was when you first saw the lights themselves? I don't mean the reflection of the lights, I mean when you saw the front of the car?

"A. Looked like to me it was about a half a car length.

"Q. About a half a car length when you first saw the lights?

"A. Yes, sir. And I thought we was going to hit like that.

\* \* \*

"Q. This car that came over the hill whose lane was it in?

"A. It was in our lane; looked like he was in the front seat with us, right up on us."

\* \* \*

"Q. \* \* \* at all times that you were with him in that car both before he got to the motel and after he left the motel he had the car under control, didn't he?

"A. To my knowledge, yes, sir."

\* \* \*

"Q. Now is there any question in your mind about the fact he had the car under control at all times?

"A. I know he had it under control."

\* \* \*

"Q. And he was driving at a reasonable rate of speed wasn't he for that road?

"A. That's right.

"Q. And there is no question in your mind about that is there?

"A. No, sir."

\*   \*   \*

"Q. And the truth is there was nothing for you to complain about was there, in all consciousness? In all honesty?

"A. What do you mean? About the way he was driving?

"Q. Yes.

"A. No, none I know."

\*   \*   \*

"Q. And Jimmy Carter did the only thing he could do to avoid the collision didn't he?

"A. That he did; yes, sir.

"Q. Isn't that true?

"A. Definitely.

"Q. You understand my question?

"A. Yes, sir.

"Q. And when he turned off that if he had not turned off of that road you would have hit that station wagon head-on wouldn't you?

"A. Definitely, yes, sir; head-on.

"Q. And on every occasion when this question has come up not to any one and you are not today have you claimed that he drove this car in any negligent or reckless manner, that's true isn't it?

"A. Yes, sir.

"Q. He drove it just as you would have driven it had you been driving the car? Do you drive?

"A. Yes, sir.

"Q. And if you had been driving the car in Jimmy's place you couldn't have done any more that he did could you?

"A. No, sir."

\*   \*   \*

"Q. Whoever was driving this station wagon was the one you feel was responsible for this accident?

"A. That's right.

"Q. Is there any question in your mind about that?

"A. No, sir."

\* \* \*

"Q. And so far as you know neither you nor have you found any evidence or produced any evidence of your own knowledge that Jimmy Carter was in any way driving this car at a high, dangerous or unlawful rate of speed? He wasn't was he, in all frankness?

"A. No."

\* \* \*

"Q. And so far as keeping a proper lookout he was looking down the road and he was driving keeping a lookout for other vehicles, was he not?

"A. That's right.

"Q. And he had the vehicle at all times I believe you told us under proper control?

"A. That's right."

\* \* \*

The passengers in the automobile driven by Paden, testifying in behalf of the respondent, admitted that they saw nothing about the operation of the Carter automobile that indicated that it was being driven at an excessive rate of speed and said that Carter did everything he could to avoid a head-on collision with the automobile in which they were riding.

The testimony shows that after the Carter car left the highway in order to avoid colliding head-on with the automobile operated by Paden that it skidded sideways on the grassy shoulder of the road, a distance of about one hundred and ten feet, striking a highway sign with such force as to sever the automobile and bend the iron supports of said sign. The respondent testified that upon contact with the grass the car sped up as if it was sliding on ice. He said the grass must have been wet because when he got out of the car he had mud on his shoes.

An officer who investigated this case testified that he found on the pavement of the road skid marks beginning

at or near the center line and extending in said road for a distance of one hundred and fifteen feet to the point where the marks on the grass shoulders of the road commenced. This officer also testified that the *prima facie* speed limit on this road was fifty-five miles an hour.

Our inquiry here is whether the respondent presents any evidence that shows the appellant guilty of either intentional or reckless misconduct which proximately caused his injury. It is the position of the respondent that the physical evidence and the testimony that the appellant was exceeding the *prima facie* speed limit required the trial judge to submit this case to the jury.

We think it is abundantly clear that, the primary efficient cause of the Carter automobile leaving the road was the unlawful act of Paden, when approaching the crest of the hill, in driving his automobile easterly in the lane of traffic reserved for westbound travel, in which the Carter automobile was proceeding. We further think that the only evidence in the record of an unlawful act by the appellant relates to excessive speed, which could not have resulted in harm to the respondent if Paden had remained in his proper lane of travel. The concurrence of excessive speed with this primary efficient cause of the injury does not impose liability on the appellant unless, without it, the injury would not have occurred. *Horton v. Greyhound Corp.*, 241 S. C. 430, 128 S. E. (2d) 776. The speed at which the appellant's automobile was traveling created merely a circumstance or condition of the accident and not its proximate cause. Conceding that the speed of the Carter automobile was in excess of the *prima facie* speed limit, it is manifest that its speed would have resulted in no injury but for the negligent and reckless act of Paden. It follows that the proximate cause of the injury to the respondent must be attributed to the unlawful acts of Paden.

Foreseeability of some injury from an act or omission is a prerequisite to its being a proximate cause of the injury for which recovery is sought. When appel-

lant observed the glow of the headlights of Paden's car, beyond the crest of the hill, he had a right to assume, in the absence of circumstances which would reasonably give notice to the contrary, that Paden was operating his automobile on the proper side of the highway. *Utsey v. Williams,* 229 S. C. 176, 92 S. E. (2d) 159. The appellant here was under no duty to anticipate negligent or willful acts or omissions on the part of Paden. *Allen v. Hatchell,* 242 S. C. 458, 131 S. E. (2d) 516, from which we quote the following:

"Although it was incumbent upon the appellant here to yield the right-of-way, she was not required to anticipate the approach of a vehicle operated in an unlawful manner. In the absence of any circumstances which would reasonably give notice to the contrary, the appellant was entitled to presume that other approaching vehicles would be operated in accordance with the law and she would not be negligent, let alone reckless, in so assuming. *Myers v. Evans,* 225 S. C. 80, 81 S. E. (2d) 32. The appellant was entitled to have her conduct judged in the light of the foregoing presumption. *Caines v. Marion Coca-Cola Bottling Co.,* 198 S. C. 204, 17 S. E. (2d) 315."

Under the evidence in this case it is our conclusion that the intervening independent acts of negligence and willfulness on the part of Paden were the sole proximate and efficient cause of the injury to the respondent and such could not have been foreseen by the appellant in the exercise of reasonable care and was not a natural and probable consequence of his original violation of the *prima facie* speed law.

There is no evidence in this record from which it can be concluded that the appellant failed to keep a proper lookout or to maintain proper control of the automobile he was driving which operated as a proximate cause or a concurring proximate cause of respondent's injury. The testimony is to the contrary.

It is our conclusion that the trial judge was in error in not granting the motion of the appellant for a directed verdict.

The judgment of the lower court is reversed and this case remanded thereto for entry of judgment in favor of the appellant.

Reversed and remanded.

LEWIS, J., and LIONEL K. LEGGE and GEORGE T. GREGORY, JR., Acting JJ., concur.

BUSSEY, J., dissents.

BUSSEY, Justice:

Finding myself not in accord with the opinion of the Chief Justice, I most respectfully dissent. In my view, the evidence, which together with the inferences reasonably deducible therefrom, has to be viewed in the light most favorable to the respondent, is clearly ample to support the verdict of the jury and the judgment of the trial court in denying the several motions of the appellant. Viewing the evidence in the required light, the facts are simply as follows:

The Carter automobile was a nearly new 1960 Plymouth Fury which had been driven only several months. Young Carter, with respondent as his guest, left the Ghana Motel traveling west on a frontage road which parallels interstate highway 85, on the south side thereof. This frontage road was level until reaching a hill a half or three quarters of a mile west of the motel. Beyond this hill, to the west, there is a second slight knoll or hill which is nine-tenths of a mile from the motel, this second knoll or hill being where the accident occurred. At a point approximately one quarter of a mile west of the motel, Carter passed a vehicle which was traveling at about 50 miles per hour. Carter was at the time traveling 65 miles per hour, and he gained sufficiently on the automobile which he passed to be completely out of sight of the passed automobile at the time of the accident.

While it was not raining at the time, the weather was a bit foggy and misty; the pavement was damp and the shoulder of the highway, with the grass thereon, was wet and muddy. When perception and reaction time of Carter

are considered in connection with the skid marks laid down by the Carter vehicle, it is clearly inferable that Carter, like Paden, was driving somewhat to his left of the center of the road when Carter first sighted the automobile driven by Paden. Carter applied his brakes and skidded a total distance of 225 feet. By tape measurement of the highway patrolman, 115 feet of the skid marks were on the pavement, and 110 feet on the shoulder. After skidding 225 feet, the Carter vehicle was still traveling at a high rate of speed. It hit sideways, and virtually demolished, an interstate highway sign. The highway sign involved was supported by two steel I-beams, the dimensions of which were five and a quarter inches by eight inches, the steel being a quarter of an inch in thickness. Each of the beams was imbedded in concrete, the circumference of the concrete foundation being three feet eight and a half inches. The impact with one of these I-beams completely severed the Carter automobile into fore and aft parts. The I-beam was badly bent and the concrete foundation thereof uprooted.

From the foregoing, I think it can be safely said that the physical evidence here is even more probative of a reckless, wilful rate of speed than was the physical evidence in *Christy v. Reid,* 244 S. C. 27, 135 S. E. (2d) 319, wherein this court held the physical evidence to be sufficient to support an inference of recklessness or wilfulness. Aside from the physical evidence, there is eyewitness testimony that within seconds before the accident, the Carter automobile passed another automobile at a speed of 65 miles per hour and it is inferential from the testimony of that witness that Carter's speed was then increasing. There is clear evidence that Carter violated Sec. 46-361 of the Code, which required him to drive at a speed that was reasonable and prudent under the conditions, and Sec. 46-363 of the Code, which required that he drive at an appropriately reduced speed when approaching a hill crest and when any special hazard existed by reason of weather or highway conditions. It is elementary that violation of these Code

sections constituted negligence *per se* and afforded the basis for an inference of wilfulness on the part of Carter.

The wilfulness of Carter being established, appellant, of course, would still not be liable unless such wilfulness was a proximate cause of the injuries sustained by respondent. The issue of proximate cause is normally one for the jury. It has been established in a long line of cases, that where there may be a fair difference of opinion as to whose act produced or contributed to the injury complained of it is for the jury to determine whether the conduct complained of was a proximate cause.

Factually, I think the instant case is clearly distinguishable from the case of *Horton v. Greyhound Corp.*, 241 S. C. 430, 128 S. E. (2d) 776, wherein this Court affirmed the conclusion of the trial judge (who heard and observed the witnesses) that no reasonable inference of causal connection between the speed at which the bus was operated and the collision could be drawn. Here, as in *Horton*, the record contains only excerpts of the testimony of the witnesses and the exhibits, consisting of numerous photographs of the scene following the accident, which were before the trial judge, are not before us. Contrary to *Horton*, the able and experienced trial judge here, who heard all of the evidence, observed the witnesses and saw the exhibits, concluded that appellant's contention as to proximate cause was totally without merit. In my view, the record which we do have clearly demonstrates that he was correct in submitting the question of proximate cause to the jury.

The evidence is in some conflict as to precisely how far over in the wrong lane the Paden automobile was when it was first sighted by Carter. It is true that the various witnesses estimated that the cars were anywhere from a half a car length to a car length and a half apart when the occupants of the respective vehicles realized their precarious situation. That their estimates in this respect were ill-advised, erroneous guesses is clearly demonstrated by other evidence in the record. The highway patrolman testified, and his

testimony is not directly contradicted, that the hill which both vehicles were approaching was "a slight knoll or hill"; that the Carter vehicle at the point where the skid marks started on the pavement was on a slight incline, and that it was either level or on a slight downgrade about the time it hit the "post". When the uncontradicted testimony of the highway patrolman as to terrain is considered in connection with the other clearly established facts, it becomes obvious, I think, that a distance of 200 or more feet separated the vehicles when Carter saw that the Paden vehicle was not in its proper lane of travel. When the perception and reaction time on the part of Carter is considered, he, of course, traveled much more than 115 feet on the pavement after sighting the Paden vehicle. All the while, the forward speed of the Paden vehicle was closing the gap which separated the two vehicles and no collision between the vehicles occurred.

While the conduct of Paden which necessitated Carter swerving to his right was, of course, a causative factor, it is, I think, readily and clearly inferable that but for the wilfulness of Carter, concurring with that of Paden, respondent would have sustained no injury whatever. Of course, Carter was not required to anticipate that Paden would approach on the wrong side of the road, and it may very well be that Carter could not have avoided taking to the shoulder of the road had he been driving at a reasonable rate of speed. Such, however, is not conclusive of the issue of proximate cause.

The record contains none of the evidence with respect to the injuries sustained by the respondent, but the complaint alleges, *inter alia,* that he sustained a fractured vertebra, broken left hand and a broken chest bone. The evidence before us is clearly susceptible of the inference that these alleged substantial injuries occurred not simply as a result of the Carter automobile taking to the shoulder, but primarily as a result of the terrific impact with which the Carter automobile struck the highway sign after skidding 225 feet. Had Carter been driving at anything like a reasonable rate

of speed, I think it clearly and reasonably inferable that he could have avoided any injury whatever to the respondent. Conversely, I conclude that the evidence rather clearly demonstrates the causal connection between the very high rate of speed on the part of Carter and the injuries sustained by respondent.

The conclusion that the "intervening independent acts of negligence and wilfulness on the part of Paden were the sole proximate and efficient cause of the injuries to respondent" is, in my view, not in accord with well established principles of law, applied to the facts disclosed by the record here. In *Huggins v. Atlantic Coast Line R. Co.,* 158 S. C. 501, 155 S. E. 839, this court adopted and applied the following rule from 45 C. J. 920,

" 'As a general rule, it may be said that negligence, to render a person liable need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury. So that where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause, without which the injury would not have resulted, *to as great an extent,* and that such other cause is not attributable to the person injured.' " (Emphasis added.)

The quoted rule was stated and applied by this court in the very recent case of *Gray v. Barnes,* 244 S. C. 454, 137 S. E. (2d) 594.

In this case the evidence is clearly susceptible of the inference that despite the recklessness of Paden, respondent would likely have sustained no injury at all "but for" the recklessness of appellant. It is, I think, patent that he would not have been injured "to as great an extent" but for the recklessness of appellant. In the recent case of *Matthews v. Porter,* 239 S. C. 620, 124 S. E. (2d) 321, we quoted, approved and applied from the case of *Henderson et al. v.*

*Powell et al.*, 221 N. C. 239, 19 S. E. (2d) 876, the following,

"No negligence is 'insulated' so long as it plays a substantial and proximate part in the injury. Restatement of the Law, Torts, sec. 447. 'In order to relieve the defendant of responsibility for the event, the intervening cause must be a superseding cause. It is a superseding cause if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury.' "

The foregoing quotation is in harmony with prior decisions of this court dealing with the question of intervening independent acts of negligence or wilfulness. The evidence here does not support the conclusion that the recklessness of Paden so entirely superseded the recklessness of appellant that the recklessness of Paden alone produced the injuries to respondent without the recklessness of appellant contributing thereto in the slightest degree.

As to the question of foreseeability, it is well settled that it is not necessary that the appellant should have contemplated the particular event which occurred. It is enough that appellant should have contemplated the probable happening of some accident of this kind involving bodily injury to others which ought to have been guarded against. *Culbertson v. Johnson Motor Lines*, 226 S. C. 13, 83 S. E. (2d) 338. As we held in the recent case of *Skipper v. Hartley*, 242 S. C. 221, 130 S. E. (2d) 486,

"Negligence need not be the sole cause of injury in order to impose liability, but need only be a 'proximate concurring cause,' which is a cause so efficient in causation that but for it the injury would not have occurred, even though one of several concurring causes may not have been reasonably anticipated. *Horne v. Southern Railway Company*, 186 S. C. 525, 197 S. E. 31, 116 A. L. R. 745."

The appeal presents another issue which I shall discuss only briefly, since such is not made a basis of decision in the

opinion of the Chief Justice. Appellant contends that he is entitled to a judgment because respondent is bound by testimony on his part which, it is claimed, exonerated appellant of any recklessness or wilfulness. I think there is no merit in this contention. It is true that much of respondent's testimony, particularly on cross-examination, was adverse to respondent. His testimony, however, which was adverse to himself and favorable to appellant consisted mainly of estimates, opinions and conclusions, rather than facts. He should not be precluded, in my view, from recovery because of such, when the other evidence in the record tends to prove rather clearly that his estimates, opinions and conclusions, unfavorable to himself, were not in accord with the true facts.

No case in point from this jurisdiction has been cited with respect to this last issue. The weight of authority, however, from other jurisdictions confirms the conclusion which I reach. See 32A C. J. S. Evidence § 1040(3), p. 776, and 169 A. L. R. 798. All of appellant's exceptions are, in my view, without merit and I would affirm the judgment of the lower court.