Thomas F. CARTER, Respondent, v. ANDERSON MEMORIAL HOSPITAL, Appellant.

(325 S. E. (2d) 78)

Court of Appeals

*H. Grady Kirven,* of *Watkins, Vandiver, Kirven, Gable & Gray,* Anderson, *for appellant.*

*Karl L. Kenyon* and *Robert P. Lusk,* both of *Kenyon & Lusk,* Anderson, *for respondent.*

Heard Oct. 16, 1984.

Decided Jan. 8, 1985.

SANDERS, Chief Judge:

Thomas Carter sued Anderson Memorial Hospital for damages allegedly resulting from personal injuries he sustained due to the negligence of hospital employees. The jury

awarded him a verdict of $17,500 actual damages, and Anderson Memorial appeals. We affirm.

Carter testified he was admitted to Anderson Memorial for hemorrhaging, and within one or two days, 10-15 percent of his stomach was removed during surgery.

According to Carter, he was feeling much better after the operation and was on the road to recovery, when two student nurses brought a portable x-ray machine into his room, got the wheels tangled in the cord and caused the machine to fall on him. Carter testified that the 24-inch-square head of the machine fell on his abdomen, which still contained large metal sutures from surgery, and pinned his left arm and hand, causing him excruciating pain and slightly cutting his left hand or wrist. He also testified that he had to assist the student nurses in raising the machine and, when he did so, he "[felt] like everything in [him] was tearing loose." He further testified that within a short period of time after the accident he was examined by one of his doctors and was given morphine. (He had been taking morphine before the accident as well.)

Carter went on to testify that the pain in his lower abdomen and left lower back which began at the time of the accident continued, he became nervous and weak, began violently hemorrhaging and vomiting blood again and had to undergo a second operation. Carter further testified he was released from Anderson Memorial approximately one month after his admission and took six months to recover. His hospital bill from the date of the accident involving the x-ray machine until his release was introduced into evidence without objection and totaled $9,581.50. Carter testifed, also without objection, that his doctors charged an additional $1,081.00 for the second operation.

Carter's wife testified he had been doing better shortly before the accident but appeared to be in pain and highly emotional afterward. In addition, two friends testified they had visited Carter the day before the accident and he was in good spirits and appeared to be doing well and making progress from the first operation. According to their further testimony, when they visited after the accident, he looked weak and was depressed and despondent.

One of the radiological technologists who took the x-ray machine into Carter's room testified that the head of the

machine slid 40 inches down its arm and struck his hand. She further testified there was a 1½-inch scratch on Carter's hand after the accident. The nurse in Carter's intensive care unit testified he told her that the machine struck both his hand and abdomen. She also testified that she saw the scratch on his hand but noted no redness or swelling of his abdomen, and his incision was intact and dry. The nurse's further testimony attributed Carter's worsening condition to the removal of a nasalgastric tube resulting in increased pressure on his abdomen or to the development of "ileus," a condition where the bile organ loses its tone and fails to contract and relax so that distention is unable to be moved through the bowel. The radiological technologist supervisor testifed that Carter complained only of the injury to his hand, but she also testified she did not talk to him. The supervisor of intensive care confirmed that Carter complained of injury to both his hand and abdomen, but testified there were no signs of injury to the latter.

The doctor who examined Carter shortly after the accident testified, in his opinion, the accident had nothing to do with the "course of his illness." He further testified as to certain findings which he said supported his opinion. He said Carter's hemorrhaging following the first operation began after the removal of the nasalgastric tube and led to the second operation being performed to locate the source of the bleeding. He also said he had been concerned about possible abdominal distention which he thought was due to either ileus or a mechanical obstruction. He said he found no active bleeding or any mechanical obstruction during the second operation, but did find a minor degree of distention consistent with ileus. The doctor also testified that x-rays taken before and after the accident showed nothing significantly different between them.

The trial judge denied Anderson Memorial's motions for nonsuit, directed verdict, and judgment notwithstanding the verdict. He noted that the verdict could be sustained on pain and suffering alone, even if the second operation was not proximately caused by the blow from the x-ray machine.

Anderson Memorial argues the trial judge erred in denying its motions because Carter failed to prove the blow from the x-ray machine was the proximate cause of his injury. Ander-

son Memorial also argues that proximate cause in this case must be proved by expert medical testimony.

Negligence is not actionable unless it is a proximate cause of the injury. *Hanselmann v. McCardel*, 275 S. C. 46, 267 S. E. (2d) 531 (1980). The question of proximate cause is ordinarily one of fact for the jury, as to which the trial court's only function is to inquire whether particular conclusions are the only reasonable inferences to be drawn from the evidence. *Davenport v. Walker*, 280 S. C. 588, 313 S. E. (2d) 354, 356 (S. C. App. 1984), citing *Kennedy v. Custom Ice Equipment Company, Inc.*, 271 S. C. 171, 246 S. E. (2d) 176 (1978). When testimony of an expert witness is not relied upon to establish proximate cause, it is sufficient for the plaintiff to present evidence which rises above mere speculation or conjecture. *Armstrong v. Weiland*, 267 S. C. 12, 225 S. E. (2d) 851 (1976). Although the lay mind is not competent to pass on some conditions, there are situations where injury occurs soon after an accident, results are within the experience and observation of the ordinary person and circumstances are such that the lay mind may draw reasonable inferences of causation, even where in conflict with medical testimony. *Miller v. Atlantic Bottling Corp.*, 259 S. C. 278, 191 S. E. (2d) 518 (1972); *Rollins v. Wunda Weve Carpet Co.*, 255 S. C. 1, 177 S. E. (2d) 5 (1970). *Cf. Gambrell v. Burleson*, 252 S. C. 98, 165 S. E. (2d) 622 (1969) (where plaintiff is in good health prior to an injury and complains that day of a condition he claims resulted from the injury, this fact alone may be sufficient evidence of causation even when medical opinion testimony is to the contrary).

In determining motions for nonsuit, directed verdict and judgment n.o.v., the evidence and all reasonable inferences which can be drawn from it must be viewed in the light most favorable to the non-moving party. *Mylin v. Allen-White Pontiac, Inc.*, 281 S. C. 174, 314 S. E. (2d) 354 (S. C. App. 1984). A jury verdict must be sustained on appeal if any evidence reasonably supports the jury's findings. *McGaha v. Whiteside*, 322 S. E. (2d) 461 (S. C. 1984).

Viewing the above evidence and all reasonable inferences which can be drawn from it in the light most favorable to Carter, we find sufficient evidence of proximate cause of injury. Carter did not need expert medical

testimony to say that when the x-ray machine fell on him he experienced pain and suffering. His complaint alleges damages based, in part, on pain and suffering. The jury verdict in the amount of $17,500 actual damages is supported by the evidence of the blow from the x-ray machine and Carter's pain and suffering alone, regardless of whether the injury was the proximate cause of the second operation.

For this reason judgment is

Affirmed.

GARDNER and BELL, JJ., concur.