0654

Dorothy Neal CASH, Respondent v. Ronald H. KIM, M.D. and T. Keith Wood, M.D., Appellants.

(342 S. E. (2d) 61)

Court of Appeals

*Ronald H. Colvin,* of *Hines, Colvin & Wolfe,* Spartanburg, and *G. Dewey Oxner, Jr.,* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for appellants.*

*Michael E. Spears,* of *Swofford, Poliakoff & Spears,* Spartanburg, *for respondent.*

Heard Jan. 28, 1986.

Decided March 18, 1986.

GOOLSBY, Judge:

This is a medical malpractice case. Ronald H. Kim, M.D., and T. Keith Wood, M.D., appeal from a jury verdict in favor of the respondent Dorothy Neal Cash. The jury awarded Mrs. Cash actual damages. It also assessed punitive damages against each physician. The questions on appeal relate to the sufficiency of the evidence as to proximate cause and as to punitive damages.[1]

---

[1] Mrs. Cash challenges the sufficiency of the physician's two exceptions. She claims both violate Rule 4, § 6 of the Rules of Practice in the Supreme Court of South Carolina because they do not contain a concise statement of one proposition of law or fact for this court to review.

The exception that raises the issue concerning proximate cause reads:
    The Circuit Court erred in allowing the issue of negligence on the part of either of the Defendants to go to the jury, the error being that

In October, 1980, Mrs. Cash began experiencing numbness in her right arm. Her family physician referred her to Dr. Marcelino Chavez, a neurosurgeon. He recommended neck surgery.

Mrs. Cash thereafter entered the Spartanburg General Hospital. Dr. Chavez visited Mrs. Cash the night before her scheduled operation and obtained her written consent for him to perform a surgical procedure described as "a nerve root decompression."

While performing the operation, Dr. Chavez preferred to have a central venous pressure catheter in place. Its purpose is to aspirate any air entering the vascular system.

Dr. Wood, an anesthesiologist, also visited Mrs. Cash the night before her operation. Although he explained to her about the anesthesia, Dr. Wood did not tell her that, because of the possibility of air getting into her vascular system, a catheter would be placed in her heart. Hospital personnel took Mrs. Cash to the operating room the following afternoon. Dr. Wood inserted a needle into her arm and a fluid began to flow into her system. Just before she lost consciousness, Mrs. Cash remembered seeing an oriental male, later identified as Dr. Kim, come into the room. Dr. Kim, a partner of Dr. Wood, is also an anesthesiologist.

While she was unconscious, Dr. Kim, in Dr. Wood's presence, attempted six times without success to insert the catheter into Mrs. Cash's subclavian vein. Dr. Wood then passed the catheter through her right, external jugular vein into her auricle.

An x-ray taken sometime after the insertion of the catheter revealed a hemomediastinum, an accumulation of

there was no evidence in the record of any negligence on the part of either of the Defendants that was a proximate cause of any of the injuries complained of by the Plaintiff.

The exception that raises the issue concerning punitive damages reads: The Circuit Court erred in allowing the issue of punitive damages to go to the jury, the error being there was no evidence in the record of any recklessness on the part of either of the Defendants and therefore, there was no basis for an award of punitive damages.

Although the physicians' exceptions technically violate Rule 4, § 6, [*see e.g., D. A. Davis Construction Company, Inc. v. Palmetto Properties, Inc.,* 281 S. C. 415, 315 S. E. (2d) 370 (1984)], we will not dismiss their appeal for that reason. *See Pate v. C.I.T. Corporation,* 199 S. C. 244, 19 S. E. (2d) 107 (1942); *Ellison v. Heritage Dodge, Inc.,* 283 S. C. 21, 320 S. E. (2d) 716 (Ct. App. 1984).

blood in the chest cavity. At one point during the placement of the catheter, a blood vessel was torn and a leakage of blood occurred. Upon finding the hemomediastinum, Dr. Chavez canceled the neck surgery.

Mrs. Cash awoke in the intensive care unit. She remained there for four days.

Dr. Chavez performed the neck surgery upon Mrs. Cash a few days later. This time, Dr. James F. Greene, a general surgeon, inserted the central venous pressure catheter. Before doing so, however, he discussed the procedure with her and obtained her oral consent.

Mrs. Cash incurred additional medical expenses because of the hemomediastinum.

She now suffers from painful breathing problems and, as a consequence, tires easily.

I.

Each physician argues the trial court erred in submitting the case to the jury and in not granting his motions for directed verdict and judgment notwithstanding the verdict. By a single exception, each physician questions whether the record contains any evidence that his negligence was a proximate cause of Mrs. Cash's injuries.

A plaintiff in a malpractice case brought against a physician must prove the physician's negligence was a proximate cause of the plaintiff's injury. *Hanselmann v. McCardle*, 275 S. C. 46, 267 S. E. (2d) 531 (1980); *Clark v. Ross*, 284 S. C. 543, 328 S. E. (2d) 91 (Ct. App. 1985). A physician's negligence may be deemed a proximate cause of a plaintiff's injury only when without that negligence the injury either would not have occurred or could have been avoided. *Hughes v. The Children's Clinic, P.A.*, 269 S. C. 389, 237 S. E. (2d) 753 (1977). The question of proximate cause is ordinarily one of fact for the jury and the trial judge's sole function regarding the question is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence. *Carter v. Anderson Memorial Hospital*, 284 S. C. 229, 325 S. E. (2d) 78 (Ct. App. 1985).

In their brief, Dr. Wood and Dr. Kim restrict their argument regarding lack of sufficient evidence to support a finding of proximate cause to the specification of negligence

alleging lack of informed consent. This court recently recognized that an action based on the lack of informed consent is no different from any other action for medical malpractice and that, in such an action, the burden rests on the plaintiff, using the objective test, to prove proximate cause. *Hook v. Rothstein,* 281 S. C. 541, 316 S. E. (2d) 690 (Ct. App. 1984), *cert. denied,* 283 S. C. 64, 320 S. E. (2d) 35 (1984).

We need not decide, however, whether Mrs. Cash offered sufficient evidence to support a finding that a reasonable person in her position would not have submitted to the procedure at issue had he or she been adequately informed because Mrs. Cash alleged in her amended complaint that other negligent acts and omissions on the part of both physicians also proximately caused her injuries. For example, as to Dr. Wood, Mrs. Cash alleged he was negligent, among other things, because he set about "to perform a medical procedure without having adequate training [or] experience"; and as to Dr. Kim, Mrs. Cash alleged he was negligent, among other things, because he failed "to halt the attempted insertion of the catheter after failing in several prior attempts to insert it."

Neither Dr. Wood nor Dr. Kim now disputes the sufficiency of the proof of these other specifications of negligence. Also, neither physician questions, by argument in their brief, the sufficiency of the evidence as to one or more of these other negligent acts and omissions being a proximate cause of Mrs. Cash's injuries. *See Beach Co. v. Charleston County School District,* 263 S. C. 7, 207 S. E. (2d) 406 (1974) (contention not argued in the brief will be deemed abandoned on appeal).

Here, the negligence causes of action on which the ■ ■ jury based its general verdict alleged several theories of liability and thus presented several issues for the jury to consider. Where a jury returns a general verdict involving two or more issues and its verdict is supported as to at least one issue, the verdict will not be set aside, *Anderson v. West,* 270 S. C. 184, 241 S. E. (2d) 551 (1978). We have, then, no alternative but to uphold as to both physicians the jury's findings implicit in its general verdict on Mrs. Cash's causes of action for negligence. Unchallenged theories of liability support the verdict against them.

## II.

Dr. Wood and Dr. Kim also argue that the evidence does not support the award of punitive damages against each of them. Their exception raises the question of whether the record contains any evidence of recklessness on the part of either in treating Mrs. Cash.

Punitive damages are recoverable in a medical malpractice case "where a physician has been guilty of gross negligence amounting to reckless indifference in treating a patient." 70 C. J. S. *Physicians and Surgeons* § 67 at 1023 (1951); *see* 61 Am. Jur. (2d) *Physicians, Surgeons, and Other Healers* § 371 at 545-46 (1981). "The test by which a tort is to be characterized as reckless . . . is whether it has been committed in such a manner or under such circumstances that a person of ordinary reason or prudence would then have been conscious of it as an invasion of the plaintiff's rights." *Rogers v. Florence Printing Company*, 233 S. C. 567, 577, 106 S. E. (2d) 258, 263 (1958).

In determining whether the evidence is sufficient to support an award of punitive damages, the Court of Appeals will consider the evidence in the light most favorable to the prevailing party and will give the prevailing party the benefit of every inference that can reasonably be drawn on his or her behalf. *Cf. Watson v. Wilkinson Trucking Co.*, 244 S. C. 217, 224, 136 S. E. (2d) 286, 289 (1964) (wherein the Supreme Court held that in determining whether a verdict for unliquidated damages is excessive the facts are to be viewed in the light most favorable to the plaintiff). The Court of Appeals will also assume the truth of the evidence that supports the recovery of punitive damages [*see Duncan v. The Record Publishing Co.*, 145 S. C. 196, 284, 143 S. E. 31, 59 (1927)] and will disregard entirely evidence to the contrary. *See* 5 C. J. S. *Appeal & Error* § 1567b at 1328 (1958).

We cannot say that, as a matter of law, the conduct of each physician in treating Mrs. Cash, when considered in the light of what a reasonably prudent physician would have either done or not done under the circumstances, does not constitute gross negligence amounting to reckless indifference. Here, the record contains evidence, if believed, from which the jury could have inferred gross

negligence amounting to reckless indifference on the part of both physicians.

For instance, J. R. Shapiro, M.D., a physician from Boston, Massachusetts, and Mrs. Cash's medical expert, testified that Dr. Wood lacked the skill required of a physician to perform the central venous pressure procedure at the time he undertook to perform it on Mrs. Cash. He also testified Dr. Kim should not have attempted to insert the catheter into Mrs. Cash after he had failed three times to do it without x-raying Mrs. Cash to see whether she had suffered any injury because of his first attempts.

In this case, therefore, the question of recklessness was one for the jury to determine. 57 Am. Jur. (2d) *Negligence* § 107 at 458 (1971); 65A C. J. S. *Negligence* § 252c at 821 (1966).

Affirmed.

SHAW and CURETON, JJ., concur.