0933

Elizabeth DANIEL, Appellant v. DAYS INN OF AMERICA, INC. and Nadia, Inc., Respondents.

(356 S. E. (2d) 129)

Court of Appeals

*Michael F. Talley,* of *Talley & Lewis,* Greenville, *for appellant.*

*James W. Logan, Jr.* and *Steven C. Kirven,* of *Watkins, Vandiver, Kirven, Gable & Gray,* Anderson, *for respondents.*

Heard Jan. 26, 1987.

Decided April 13, 1987.

CURETON, Judge:

Elizabeth Daniel commenced this action against Days Inn of America, Inc., and franchise holder Nadia, Inc., to recover damages for negligence allegedly caused by the hotel's failure to use reasonable security to protect her from a sexual assault. The trial court granted the hotel's motion for summary judgment. Daniel appeals. I would reverse and remand.

Daniel voluntarily went to the hotel on the evening of April 6, 1983. The purpose of her visit was to discuss a paternity suit and child support for her child, who was fathered by Roscoe Brown, a paying guest at the hotel. Daniel had known Brown since 1980 and stated in her affidavit she did not have any fear of meeting Brown at the hotel since he had never shown her any "violent or weird propensities." She also stated she agreed to meet Brown at the hotel because his wife did not know anything of his past relationship with Daniel and of their daughter.

Daniel testified she and Brown discussed the situation amicably for about two hours. Brown then rather jokingly commented he would have to blackmail her if she would not drop the lawsuit. He then admitted into his hotel room two other men, Braxton and Vaughn. The three men proceeded to rape and torture Daniel for approximately six hours. Daniel lost approximately half of her blood supply during this attack and was hospitalized following her ordeal. The occupant of an adjoining room, Eleanor Hyde, testified that

loud music, raucous "uncouth" men's voices and a female's "bloody screams" continued on and off for hours from the adjoining room. Mrs. Hyde did not contact the front desk or call law authorities because she feared retaliation from the offenders. Daniel finally prevailed on one of her assailants to assist her. Upon reaching the front of the hotel she received assistance from the "night auditor" on duty at the hotel's front desk. All three men were arrested and pled guilty to criminal sexual assault.

Daniel's suit alleged the hotel had improper and insufficient security and failed to exercise ordinary and reasonable care for her protection. She further alleged the hotel disregarded its duties in a careless, grossly negligent, reckless, willful and wanton manner. The hotel entered a general denial and pled the affirmative defenses of contributory negligence and assumption of risk. It also alleged its registered guests are entitled to privacy and the hotel had no basis on which to reasonably believe rape and torture were taking place. The hotel moved for summary judgment.

The circuit court granted the hotel's motion, concluding there were no genuine issues of material fact. The trial judge found the security provided at the hotel was "adequate and reasonable under all the circumstances." He concluded as a matter of law there was no breach of duty to Daniel. Even if the security was found to be lacking, he concluded such omission was not the direct and proximate cause of the sexual assault upon Daniel; rather, the unanticipated criminal acts of Brown, Vaughn and Braxton were the proximate cause of her injuries.

Daniel argues on appeal that summary judgment was improper in this case because there were genuine issues of material fact regarding the alleged breach of a legal duty owed to her and the proximate cause of her injury. On a motion for summary judgment, the inferences to be drawn from the underlying facts in the record must be viewed in the light most favorable to the party opposing the motion, and summary judgment should be granted only when it is perfectly clear no issue of fact is involved. *Dyer v. Moss*, 284 S. C. 208, 325 S. E. (2d) 69 (Ct. App. 1985). The evidence supporting the movant is closely scrutinized, while that of the opponent is treated indulgently. *Id.*

To recover in a cause of action in negligence, the plaintiff must demonstrate: (1) a duty or obligation to conform to a particular standard of conduct toward another; (2) a breach of that duty; (3) proximate causation; and (4) injury. *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S. C. 479, 238 S. E. (2d) 167 (1977). I first consider what duty the hotel owed to Daniel.

The hotel argues that because Daniel was on the premises for personal reasons of Brown, the registered guest of the hotel, she was a mere licensee. The hotel reasons that as a licensee it owed Daniel no duty except: (a) to use reasonable care to discover her and avoid injury to her in carrying on the activities of innkeeper; and (b) to use reasonable care to warn her of concealed dangerous conditions or activities known to it which may be dangerous to her and which it may reasonably be expected to discover.

I hold that a discussion of the hotel's duty to Daniel is inappropriate on the record before us for the reason that the trial court rejected that argument in granting summary judgment and no issue has been taken with that ruling. In rejecting this argument, the trial court found that "in the final analysis, the issue is whether, under all the circumstances, the innkeeper in this case provided for its guests reasonable protection against injuries from criminal acts." The hotel does not raise as an additional sustaining ground the error of this holding and I think it should not be permitted to do so now. Rule 4, Section 8, Rules of Practice in the Supreme Court of South Carolina; *Rental Uniform Service of Florence, Inc. v. Dudley*, 278 S. C. 674, 301 S. E. (2d) 142 (1983); *Pinckney v. Orkin Exterminating Company*, 268 S. C. 430, 234 S. E. (2d) 654 (1977); *Green v. City of Bennettsville*, 197 S. C. 313, 15 S. E. (2d) 334 (1941).

## I.

Having determined the hotel's duty to Daniel is not an issue in this appeal, I will now consider whether, for purposes of summary judgment determination, there was a genuine issue of material fact as to whether the duty was breached. The circuit court relied heavily on *Courtney v. Remler*, 566 F. Supp. 1225 (D. S. C. 1983), *aff'd*, 745 F. (2d) 50 (4th Cir. 1984), in finding that as a matter of law the

security program at the hotel was reasonable under all the circumstances and the hotel did not breach its duty to Daniel. I disagree.

An innkeeper is not automatically exonerated from negligence when a criminal act is the actual cause of the invitee's injuries. *Courtney v. Remler, supra.* The hotel's acts or omissions may be negligent if the hotel realized or should have realized that its conduct involved unreasonable risks of harm through the conduct of a third person, even though such conduct of the third person is criminal. *Id.* Our Supreme Court has held in an analogous case that while a storeowner is generally not charged with the duty of protecting its customers against criminal acts of third parties, the intervening criminal act of another may not always relieve the storeowner of liability for his negligence. *Shipes v. Piggly Wiggly St. Andrews, Inc., supra.* Although a proprietor of a hotel is not an insurer of the safety of his guests against improper acts of other guests or third persons, he is bound to exercise reasonable care in this respect for their safety, and may be held liable on grounds of negligence for failure to do so. 40 Am. Jur. (2d) *Hotels, Motels, and Restaurants* Section 111 (1968).

In *Courtney* the federal district court held that under the circumstances, reasonable measures were taken by the hotel to ensure the safety of the hotel guests.[1] The trial court analogized this case to *Courtney* and found similarities in that: (1) only minor vandalism had occurred in the past with no criminal acts against hotel guests;[2] (2) both hotels continued ongoing security programs at the time of these incidents; (3) while twenty-four hours a day armed guards would afford more protection, the hotels' security programs were nonetheless adequate; (4) both hotels had, until these

---

[1] I note that in *Courtney*, unlike the summary judgment motion here, the trial judge dismissed the action under Fed. R. Civ. P. 41(b) following the presentation of all the plaintiff's evidence. I note also that there was a great deal more evidence before the *Courtney* court regarding the physical layout of the hotel's premises and other security measures than I have here. In *Courtney*, there was also evidence that the hotel employed a night duty security guard.

[2] Unlike here, there had been no criminal acts committed against *any person* prior to the incident giving rise to the lawsuit.

incidents giving rise to the lawsuits, done a fine job in keeping the criminal element off the premises; and (5) in both cases, hotel security was in the hands of the hotels' employees. The judge specifically found that in this case the hotel's security program included "maids, maintenance personnel, employees on the premises, equipment (telephones, locks, lights, etc.), a night auditor trained in innkeeper security procedures, who patrolled the premises twice each evening and Deputy Sheriffs of the Anderson County Sheriff's Department." The judge also found this hotel was in a low crime area.

Daniel presented an affidavit from Robert Plummer, a professional security agent who teaches and attends seminars in security procedures, including hotel security systems. Plummer testified that he reviewed all the facts surrounding the attack on Daniel. He stated that the hotel's security manual was a very well written document, but concluded that the hotel's personnel failed, before and at the time of the attack, to implement any of the policies and procedures outlined in the manual to provide any security at the hotel. Specifically, he opined that in a hotel of this size at this location, it would be reasonable for security patrols to be made at least once or twice an hour. He cited the hotel's failure to employ security guards or have specific directives regarding periodic inspections of the hotel premises for the protection of its guests "totally unreasonable," especially in view of the fact that the hotel's own security manual recognizes that the presence of uniformed security guards deters crime.

Plummer also testified that Brown's registration slip, which was completed under an assumed name and for which he was not required to sign or present any evidence of identification, was useless in terms of security because it contained no information and allowed Brown to remain incognito and carry out his scheme of attacking Daniel.

Plummer further testified that he had reviewed the crime statistics for Anderson County and the State for 1983 and stated that the County has a very high rate of serious crime such as murder and rape. He further stated there had been incidents of thefts, vandalisms, domestic disturbances and armed robbery on the hotel's premises. He concluded that, .

based on the above incidents, the hotel "should have been placed on notice that they had security problems and that they should have taken steps to provide adequate and reasonable security for the protection of its premises."

Finally, referring to testimony of Eleanor Hyde, the occupant of the adjoining room, Plummer stated that in his opinion, if the hotel made periodic patrols on an hour or half-hour basis, the attack on Daniel could have been prevented or aborted before five to six hours passed. He concluded that, in his professional opinion, the hotel failed to use reasonable security procedures that night to protect its guests.

The record contains other evidence demonstrating the hotel should have had notice to provide reasonable methods of ensuring the safety of Daniel and other guests. Fifty Anderson County Sheriff's Department incident reports for criminal activity at the hotel from 1979 through March 1983 were included in the record. Thirty-nine incidents of larceny and breaking and entering associated with larceny occurred. There were also reports of vandalism and fraud. Two incidents of armed robbery of desk clerks had occurred on the premises. A deputy sheriff testified that he had responded to some domestic disputes and complaints of loud parties and noise for which he did not fill out incident reports.

Another deputy sheriff testified that they patrolled the area between zero to three times a night, depending on how busy they were. The patrol consisted of driving around the hotel. The "night auditor," a sixty-four year old man, stated that "there is no stated or designated information [requiring him to make periodic inspections of the hotel] from the hotel itself." He testified, however, that he usually walks around the hotel twice a night, once at one o'clock, and again at three o'clock.

The night auditor also testified he patrolled the area at approximately 1:10 a.m. that night, but heard no disturbance. Daniel testified she screamed frequently during her ordeal. Mrs. Hyde testified of hearing interspersed screams over a prolonged period of time which "had to be pretty loud to hear over that music" coming from the adjoining room. She also testified to hearing clear statements which convinced her "in no uncertain terms that the male planned to

have sexual intercourse with the female and the female was going to have no part of it." She testified that due to the continuing disturbance in the next room she feared for her own life.

The facts and posture of this case are similar to those of *Urbano v. Days Inn of America, Inc.*, 58 N. C. App. 795, 295 S. E. (2d) 240 (1982), relied on by Daniel. In *Urbano*, Days Inn was granted a motion for summary judgment in a negligence suit brought by a guest assaulted in the hotel parking lot by a third party. The court held the hotel owed a duty to exercise reasonable care to protect their guests from the criminal acts of third persons on the hotel premises.

The *Urbano* court found the trial court had evidence before it of at least forty-two episodes of criminal activity on the hotel premises in the three years preceding the attack on the guest. While none of these criminal episodes involved an assault on a guest, there was one armed robbery on the premises and seven illegal entries into hotel rooms. Moreover, the trial court had evidence before it that the hotel premises were not guarded or patrolled by security officers employed by the hotel, but that the hotel relied on routine visits by local police to provide security.

The *Urbano* court found the "materials" before the trial court raised triable issues as to whether the defendant should have reasonably foreseen the conditions of its premises were such that its guests might be exposed to injury by criminal acts of third parties, and whether reasonable care had been exercised to protect the guest from injury from such acts. The court therefore reversed the grant of summary judgment to the hotel.

Here, unlike the facts in any other case I have read, the attack and torture occurred over a five or six hour period. I think this feature of the case makes appropriate a discussion of the negligence of the hotel in failing to discover Daniel and her peril.

In the case of *Aaser v. City of Charlotte*, 265 N. C. 494, 144 S. E. (2d) 610 (1965), the North Carolina Supreme Court discussed a landowner's duty to protect his invitees from injury caused by the acts of third parties as follows:

> In the place of amusement or exhibition, just as in the store, when the dangerous condition or activity ...

arises from the act of third persons, whether themselves invitees or not, the owner is not liable for injury resulting *unless he knew of its existence or it had existed long enough for him to have discovered it by the exercise of due diligence and to have removed or warned against it* (emphasis added).

144 S. E. (2d) at 615.

The *Restatement (Second) of Torts* Section 344 (1965), sets forth an owner's general duty to protect his invitees from harm caused by the acts of third persons:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) *discover that such acts are being done* or are likely to be done ... (emphasis added).

It is not required that notice to a proprietor regarding danger to a patron be long and continued in order to subject him to liability; it is enough that there be a sequence of conduct sufficient to enable him to act on behalf of his guest's safety. *Gould v. Taco Bell,* 239 Kan. 564, 722 P. (2d) 511 (1986).

I hold the record presents genuine issues of material fact concerning the adequacy of the hotel's security measures. Clearly, the trial judge ruled on disputed matters such as the characterization of the area as a "low crime area" where there was contrary evidence, or ruling that the hotel had done a "fine job" keeping out the criminal element in light of the fifty incident reports from the Anderson County Sheriff's Department. Therefore, the record contains disputed evidence which raises material issues of fact whether the hotel breached its duty to Daniel to *provide reasonable protection against injuries from criminal acts.* Also, because of the prolonged nature of Daniel's torture, the facts and reasonable inferences from those facts present an additional material issue of fact whether the hotel breached its duty to exercise reasonable care to discover

Daniel's peril and take measures to abort the attack before five or six hours elapsed.

## II.

Finally, the judge ruled in the alternative that Daniel's suit must also fail on the issue of proximate cause. The judge concluded that, as a matter of law, the immediate cause of the rape was the criminal acts of the three assailants which could not have been reasonably foreseen by the hotel, and, therefore, their conduct constituted an independent, intervening cause absolving the hotel of liability.

Where, between acts of negligence and the occurrence of an injury, willful, malicious and criminal acts of third persons intervene producing injury, which were not intended by the negligent person and could not have been foreseen by him, the causal chain between negligence and injury is broken. *Stone v. Bethea,* 251 S. C. 157, 161 S. E. (2d) 171 (1968).

The touchstone of proximate cause in South Carolina is foreseeability of some injury from a defendant's acts or omissions. *Kennedy v. Carter,* 249 S. C. 168, 153 S. E. (2d) 312 (1967). The standard by which foreseeability is determined is that of looking to the natural and probable consequences of the act complained of. *Young v. Tide Craft,* 270 S. C. 453, 242 S. E. (2d) 671 (1978). It is not necessary that the actor must have contemplated or could have anticipated the particular event which occurred. *Id.* He may be liable for anything which appears to have been a natural and probable consequence of his negligence. "If the actor's conduct is a substantial factor in the harm to another, the fact that he neither foresaw nor should have foreseen the extent of harm or the manner in which it occurred does not negative his liability." *Childers v. Gas Lines, Inc.,* 248 S. C. 316, 325, 149 S. E. (2d) 761, 765 (1966).

Turning now to the instant case, it must be determined if there is a genuine issue of a material fact whether Daniel's injuries are a probable consequence of the hotel's breach of its duty to provide reasonable protection to Daniel. In making such a determination, it is elementary that I view the evidence in the light most favorable to Daniel. *Dyer v. Moss, supra.*

Here, it is evident that the hotel perceived some threat of physical harm to its guests by reason of the fact that it required its night auditor to walk the hotel's premises once or twice each night and the fact that it had requested the sheriff's department to patrol the hotel's parking area. It is not illogical to infer that in view of the two armed robberies and many breakins, the hotel could have foreseen that its guests may be physically attacked on its premises by third parties. The hotel's contention that it could not have foreseen that one of its guests would also attack another guest is at least a fact question that should not be decided at the summary judgment stage.

Ordinarily, the question of proximate cause is a jury issue. *Carter v. Anderson Memorial Hospital*, 284 S. C. 229, 325 S. E. (2d) 78 (Ct. App. 1985). I hold that the evidence in this record presents triable issues of fact of whether the hotel's acts constituted negligence which proximately caused injury to Daniel.

Aside from the question of whether the criminal acts of third persons in raping Daniel were foreseeable, there is evidence that even the barest of security measures at the hotel would have permitted the discovery of Daniel's torture and aborted it before the expiration of five or six hours.

For the reasons stated above, I would reverse the granting of summary judgment and remand the case to the trial court.

Reversed and remanded.

SANDERS, C. J., concurs in separate opinion.

GOOLSBY, J., dissents with separate opinion.

SANDERS, Chief Judge (concurring):

I have carefully considered the fine opinions of both Judge Cureton and Judge Goolsby and have at last decided to concur in the result reached by Judge Cureton, although for somewhat different reasons (or at least for less elaborately stated reasons).

I reach this result based on two fundamental principles which must be taken into account in deciding a motion for summary judgment. The first principle is that summary judgment should not be granted unless both the material

facts and the inferences which can be drawn from those facts are undisputed, and the second is that summary judgment is inappropriate where further injury into the facts is desirable. *Shea by Reynolds v. State Department of Mental Retardation*, 279 S. C. 604, 310 S. E. (2d) 819 (Ct. App. 1983), *overruled on other grounds, McCall v. Batson*, 285 S. C. 243, 329 S. E. (2d) 741 (1985).

The guest in the room adjoining the room in which Ms. Daniel was raped testified that she heard bloody screams coming from the room off and on for hours. Ms. Daniel said in her affidavit that the rape occurred over five or six hours, ending around 3 or 4 a.m. The night auditor for the hotel testified that he patrolled the premises at approximately 1:10 a.m.

It seems to me that a jury could reasonably infer from this evidence that the night auditor actually heard the screams of Ms. Daniel and chose to ignore them. After all, if the guest in the adjoining room could hear her screams through the door separating the two rooms, it would seem reasonable to infer that the night auditor could have heard the screams through the outside door to the room in which the rape was taking place. Of course, it might very well be that for some reason he could not have heard the screams, but it would seem to me that at least further inquiry into these facts is desirable. While it is true that he denies hearing the screams, a jury might not necessarily believe his testimony in the face of circumstantial evidence to the contrary.

When the case is viewed from this perpective, the issues of whether the hotel breached a duty owed Ms. Daniel and whether her injury was reasonably foreseeable become substantially less difficult. It would seem to me that once the night auditor heard the screams of Ms. Daniel he would have the duty to at least telephone the police.[3] It would also

---

[3] In deference to the opinion of Judge Goolsby, I will concede that the existence of this duty can only be determined by means of a certain tautology: its presence must be assumed before it can be found. However, it does not seem to me that the ordinary requirements of human behavior are unduly strained by saying that a hotel keeper should call the police when he knows a woman in one of his rooms is being raped. (The careful reader will note that this is the only duty I have found, or found it necessary to find, in concurring in the opinion of Judge Cureton.)

seem that once he heard her screams he could easily have foreseen that she would suffer injury or further injury if he did not act in some way to assist her.

For these reasons, I would reverse the order granting summary judgment for the hotel and remand the case for further proceedings.

GOOLSBY, Judge (dissenting):

I respectfully dissent from the judgment reached by Chief Judge Sanders and Judge Cureton. In my view, no breach of any duty owed by the respondents Days Inn of America, Inc., and Nadia, Inc., proximately caused the appellant Elizabeth Daniel's injuries and damages.

Judge Cureton writes that "a discussion of the [m]otel's duty to [Mrs.] Daniel is inappropriate ... for the reason that the trial judge rejected that argument in granting summary judgment and no issue has been taken with that ruling." I believe, however, that discussion of the motel's duty to Mrs. Daniel to protect her from criminal acts committed by a third person is appropriate and that this issue may be properly addressed, particularly since, in my view, it is dispositive. Under Supreme Court Rule 4, Section 8, this court can "sustain any ... judgment upon any grounds appearing in the record." In fact, this court should affirm a trial court's correct decision even if the trial court gives the wrong reasons for its judgment. *Foster v. Taylor*, 210 S. C. 324, 42 S. E. (2d) 531 (1947); 5 Am. Jur. (2d) *Appeal and Error* § 785 at 227 (1962). After all, it is the erroneous ruling and not the reasons given for the ruling that is subject to appellate review. *Harrison v. Regents of University System*, 105 Ga. App. 817, 125 S. E. (2d) 793 (1962).

Mrs. Daniel contends that the motel operators here were negligent because they did not provide adequate security to protect their guests and other persons on the motel premises, including herself. Specifically, she argues that her injuries and damages were proximately caused by the motel operators' breach of their duty to employ security guards, to make periodic inspections of the motel premises, and to require identification of guests upon their registration.

As Judge Cureton's opinion reveals, the criminal assault upon Mrs. Daniel by a guest of the motel and two other

males occurred behind the closed, locked door of a motel room into which she voluntarily went by invitation with the guest who rented the room. The other two males did not force their way into the room; rather they too entered it at the invitation of the guest. Mrs. Daniel knew the guest.

While Chief Judge Sanders in his concurring opinion simply assumes that motel operators owe an invitee of a motel guest a duty to protect the invitee from the intentional and wrongful acts of the guest and of other third parties in the privacy of the guest's motel room, Judge Cureton points to Section 344 of the *Restatement (Second) of Torts* (1965) as the apparent origin of this duty. I can find no case that applies Section 344 in a similar fashion. Certainly, *Aaser v. City of Charlotte*, 265 N. C. 494, 144 S. E. (2d) 610 (1965), relied on by Judge Cureton, is not such a case. It involved a lady hockey fan who, while walking in a corridor of an arena, was struck in the face by a hockey puck propelled by a group of boys playing in the corridor.

Each case I have read that refers to Section 344 involved intentional and wrongful acts either being committed in a common area, such as a parking lot [*see, e.g., Atamian v. Supermarkets General Corp.*, 146 N. J. Super. 149, 369 A. (2d) 38 (1976) (plaintiff assaulted and raped in a supermarket's parking lot)], a restroom [*see, e.g., Virginia D. v. Madesco Investment Corp.*, 648 S. W. (2d) 881 (Mo. 1983) (plaintiff raped in a motel's restroom)], or a lobby [*see, e.g., Nallan v. Helmsley-Spear, Inc.*, 50 N. Y. (2d) 507, 429 N. Y. S. (2d) 606, 407 N. E. (2d) 451 (1980) (plaintiff's husband shot in the back as he leaned over to sign a guest register in the lobby of an office building)], or, in the case of a hotel or motel room, being committed by an intruder. *Kveragas v. Scottish Inns, Inc.*, 733 F. (2d) 409 (6th Cir. 1984) (three intruders forced open a door of a motel room and robbed and injured the occupants). Again, this case does not involve a common area, but a motel room; and it does not involve an intruder, but a motel guest and his acquaintances.

In any case, the independent, illegal acts of the guest and his two companies in brutally assaulting Mrs. Daniel in the motel room were not reasonably foreseeable. The record before us contains no evidence that the motel operators could have reasonably foreseen that a guest and his acquain-

tances would criminally assault an invitee of the guest in the latter's motel room. Whatever the motel operators' responsibility was to provide security at the motel in this instance, it did not extend so far as to protect an invitee of a motel guest from being criminally assaulted in the guest's motel room by the guest and his friends. *See Green v. Atlantic and Charlotte Air Line Railway Co.*, 131 S. C. 124, 133, 126 S. E. 441, 444 (1925) ("The proposition that the wrongful or illegal act of an independent third person may not be regarded as such a consequence of a tortfeasor's alleged wrong as should entail legal liability must rest . . . upon the assumption that such a consequence is not one of which a person who assumes the discharge of the ordinary civil obligation has knowledge or the opportunity by the exercise of reasonable diligence to acquire knowledge. . . ."); 57 Am. Jur. (2d) *Negligence* § 206 at 581 (1971) ("The deliberate, intentional, wrongful, or criminal acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts.").

In support of her argument that the assault on her and the injury resulting therefrom were of such character that the motel operators should have reasonably foreseen and anticipated them, Mrs. Daniel points to evidence in the record of reports of criminal activity, including two armed robberies, at the motel prior to the assault upon her.

None of these crimes, however, was directed against motel guests or their invitees. The two armed robberies involved motel employees. The rest, for the most part, concerned either thefts of motel property, such as television sets and bedding articles, or guests who left the motel without paying their lodging or food bills.

Moreover, this evidence is completely irrelevant. The attack on Mrs. Daniel did not take place in a motel office, a parking lot, a hallway, or a stairwell and it was not carried out by unknown intruders. In emphasizing this evidence, Mrs. Daniel, as does Judge Cureton in his opinion, ignores the more immediate circumstances surrounding the assault. These circumstances concern where the assault occurred, who committed the assault, what prompted it, and how Mrs. Daniel happened to be where she was in the first place.

Mrs. Daniel also points to evidence of the alleged failure of the motel operators to require proper identification of registered guests and of the alleged failure of the motel operators to have a security guard patrol the motel premises. This evidence too is irrelevant, considering the more immediate circumstances surrounding the assault on Mrs. Daniel. That assault cannot be regarded as a natural and normal consequence of these failures and as a consequence that the motel operators reasonably should have anticipated would result therefrom. *See Green v. Atlantic and Charlotte Air Line Railway Co.*, 131 S. C. at 133, 126 S. E. at 444 (an alleged tortfeasor cannot be charged with an illegal act of an independent third person that "is an unnatural and abnormal intervention in the ordinary train of events and consequences not reasonably to be anticipated from the act or omission which is charged to the alleged tortfeasor as a breach of duty.").

Judge Cureton's view in this case that liability can be imposed upon motel operators for a criminal assault occurring in a rented motel room by a guest and his companions where the victim knows the guest and where the victim voluntarily enters the room in which the assault takes place goes far beyond anything I have read regarding hotel or motel liability for third party assaults. *See, e.g.*, Annot., 28 A. L. R. 4th 80 (1984) ("Liability of Hotel or Motel Operator for Injury to Guest Resulting from Assault by Third Party"). Indeed, to hold that any hotel or motel operator could be liable for a criminal assault under the facts of this case effectively makes the operator an insurer of the safety of its guests and their invitees. *See Courtney v. Remler*, 566 F. Supp. 1225 (D. S. C. 1983), *affirmed*, 745 F. (2d) 50 (4th Cir. 1984) (an innkeeper is not the insurer of the safety of his guests); *cf. Young v. Morrisey*, 285 S. C. 236, 329 S. E. (2d) 426 (1985) (a landlord is not an insurer of the safety of tenants and their guests).

What judge Cureton really says is that the motel operators here had a duty to prevent or stop a guest from assaulting the guest's invitee in the privacy of a motel room and that this duty was breached by not having a security guard patrolling about the premises within earshot of the room and by not requiring identification of its guests upon

registration. My research indicates that this view is truly singular.

I sympathize greatly with Mrs. Daniel and am not at all insensitive to her claim for damages. Her ordeal was unspeakable. Simple justice in this case would be for her to be paid and for her assailants to pay her; however, Days Inn and Nadia should not be required to do so. *Orlando Executive Park, Inc. v. P. D. R.*, 402 So. (2d) 442, 28 A. L. R. 4th 65 (Fla. Dist. Ct. App. 1981) (Cowart, J., dissenting), *approved*, 433 So. (2d) 491 (Fla. 1983).

I therefore would affirm the granting of summary judgment to Days Inn and Nadia.