541 S.E.2d 847

**M. Andrew JEFFORDS, Appellant,**

v.

**Bonneau LESESNE, individually and d/b/a "The Watering Hole," Respondent.**

**No. 3267.**

Court of Appeals of South Carolina.

Heard Sept. 12, 2000.

Decided Dec. 11, 2000.

Rehearing Denied March 12, 2001.

658

---

Eugene A. Fallon and H. Thad White, Jr., both of Fallon Law Firm, of Florence, for appellant.

Arthur E. Justice, Jr., of Turner, Padget, Graham & Laney, of Florence, for respondent.

HOWARD, Judge:

Andrew Jeffords brought this negligence action against Bonneau Lesesne, individually and doing business as The Watering Hole (collectively referred to as "Lesesne"), for injuries Jeffords received in an assault which occurred at The Watering Hole, a bar owned by Lesesne. At trial, the court directed a verdict for Lesesne as to all allegations of negligence except those pertaining to the sale of alcohol to an

intoxicated person under the Dram Shop Act. *See* S.C.Code Ann. § 61–6–2220 (Supp.1999). As to the remaining issue, the jury returned a verdict for Lesesne, concluding his employees did not knowingly sell alcohol to the assailant.

On appeal, Jeffords argues the trial court erred in (1) granting Lesesne's motion for directed verdict as to the allegations of negligence; (2) refusing to admit opinion testimony from the former manager of The Watering Hole regarding deviations by Lesesne and bar employees from the policies and procedures of the bar on the night of the altercation; and (3) charging the jury an incorrect burden of proof. We reverse and remand for a new trial.

## FACTS

Lesesne is the owner of several businesses which sell alcoholic beverages for consumption on the premises, including The Watering Hole. On October 4, 1994, The Watering Hole hosted an "End of Summer Bash." The event was heavily promoted and open to the public. The bar was crowded, and Lesesne did not provide any security.

Jeffords and several of his friends attended the event, intending to play pool on a coin operated pool table. While waiting to play, Jeffords placed quarters on the edge of the table. As Jeffords began to deposit the quarters to play pool, another patron, later identified as Chris Driggers, claimed ownership of the quarters. Jeffords disputed Driggers' claim. Suddenly, and without warning, Driggers hit Jeffords in the mouth with his pool cue, causing Jeffords severe injuries. Driggers ultimately pled guilty to Assault and Battery of a High and Aggravated Nature for the assault.

Jeffords brought this action, asserting three allegations of negligence creating a reasonably foreseeable risk of third party conduct such as the assault by Driggers. At the conclusion of Jeffords' case, Lesesne moved for a directed verdict as to those allegations of negligence, arguing that neither Lesesne nor the employees of The Watering Hole could foresee the criminal acts of a third person. The trial court granted the motion as to all allegations of negligence except as to the service of alcohol by the bar to an intoxicated person.

Ultimately, the jury found for Lesesne on the Dram Shop allegations, concluding that the employees of The Watering Hole did sell beer to Driggers, but did not know or have reason to know that Driggers was intoxicated. This appeal follows.

## LAW/ANALYSIS

### I. Directed Verdict

Jeffords argues the trial court erred in directing a verdict as to the negligence of Lesesne in creating a reasonably foreseeable risk of such third party conduct as Driggers' assault. The court found no evidence to support a conclusion that the following allegations of negligence were a proximate cause of Jeffords' injuries: (1) the defendant failed to secure and maintain the premises in a reasonably safe condition; (2) the defendant failed to employ adequate security guards; and (3) the defendant failed to adequately warn Jeffords.

In ruling on a directed verdict motion, the trial court must view the evidence and all inferences which may be reasonably drawn therefrom in the light most favorable to the non-moving party. *Fleming v. Borden, Inc.*, 316 S.C. 452, 450 S.E.2d 589 (1994). If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. *Id.*

An action for negligence requires the plaintiff to allege facts sufficient to demonstrate: (1) a duty of care owed by the defendant; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by the breach. *Kleckley v. Northwestern Nat. Cas. Co.*, 338 S.C. 131, 526 S.E.2d 218 (2000).

Generally, there is no duty to protect against the criminal acts of a third party unless the owner of the premises knew or had reason to know of the criminal attack. *Bullard v. Ehrhardt*, 283 S.C. 557, 324 S.E.2d 61 (1984). In *Bullard*, the court found that the tavern owner could not have foreseen the criminal actions of a patron who spontaneously threw a beer bottle at another patron. *Id.* Similarly, based upon the spontaneity of the attack in this case, the trial court concluded that any negligence in failing to have security or to warn was not a

proximate cause of Jeffords' injury. Applying the general rule found applicable in *Bullard*, the trial court concluded that liability could attach to Lesesne only if The Watering Hole employees negligently sold alcohol to Driggers when he was in an intoxicated condition.

Jeffords argues the trial court construed his cause of action too narrowly. He maintains a question of fact was raised as to the liability of Lesesne because Lesesne and his employees created a foreseeable risk of such third party conduct.

To factually support this argument, Jeffords presented evidence to establish the following: (1) The Watering Hole is in a high crime area; (2) it is a bar which serves beer by the pitcher and the glass; (3) on the night in question it hosted a special event in conjunction with a local radio station, advertising a large cash prize and attracting a larger than normal crowd; (4) Lesesne has a written policy in effect for The Watering Hole and his other establishments calling for security measures which were not in place on that night; (5) the only employees on duty that night were two female bartenders; and (6) the pool tables are located in the back room, out of the sight of the bartenders.

As legal authority for this argument, Jeffords cites *Greenville Memorial Auditorium v. Martin*, 301 S.C. 242, 391 S.E.2d 546 (1990). In that case, the City employed only fourteen security guards to police a crowd of 6,000 people attending a rock concert which featured a rock group whose songs contained lyrics encouraging lawless behavior. The City provided no reserve seating on the main floor, and those on the main floor stood before the band. The crowd became unruly, pushing and shoving each other, and some smoked marijuana and consumed alcohol. There were pieces of broken glass on the floor. A patron standing on the main floor was injured when he was struck by a beer bottle thrown by another patron standing above him in the balcony.

Under the Tort Claims Act, a governmental entity cannot be held liable for a loss resulting from the act or omission of a person other than an employee, including, but not limited to, the criminal acts of third persons. *See* S.C.Code Ann. § 15–78–60(20) (Supp.1999). Notwithstanding this provision, our supreme court upheld a jury verdict against the City of

Greenville based upon its negligence in failing to adequately secure its auditorium during the concert. Although the City argued it was statutorily immune from liability under § 15–78–60(20), our supreme court rejected this contention "where the very basis upon which appellant is claimed to be negligent is that appellant created a reasonably foreseeable risk of such third party conduct." *Greenville Mem'l Auditorium,* 301 S.C. at 247, 391 S.E.2d at 549.

Prior to *Greenville Memorial Auditorium,* our supreme court alluded to the negligence of those who create a reasonably foreseeable risk of such third party criminal conduct as a basis for liability in *Shipes v. Piggly Wiggly St. Andrews, Inc.,* 269 S.C. 479, 238 S.E.2d 167 (1977). In *Shipes,* the court quoted with approval from the Restatement of Torts:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. *** If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

269 S.C. at 485, 238 S.E.2d at 169 (quoting Restatement of Torts 2d § 344 comment (f)); *see Daniel v. Days Inn of America, Inc.,* 292 S.C. 291, 356 S.E.2d 129 (Ct.App.1987); *Munn v. Hardee's Food Sys., Inc.,* 274 S.C. 529, 266 S.E.2d 414 (1980); *Miletic v. Wal–Mart Stores, Inc.,* 339 S.C. 327, 529 S.E.2d 68 (Ct.App.2000); *Dalon v. Golden Lanes, Inc.,* 320 S.C. 534, 466 S.E.2d 368 (Ct.App.1996); *Callen v. Cale Yarborough Enter.,* 314 S.C. 204, 442 S.E.2d 216 (Ct.App.1994). Essentially, Jeffords maintains that the place and character of The Watering Hole is such that Lesesne and his employees should have reasonably anticipated the criminal acts of Driggers.

Taking the evidence in a light most favorable to Jeffords, we agree. The Watering Hole is located in a "high crime area," situated next to a motel owned by Lesesne. Because of the number of previous crimes committed in the area, Lesesne

provided police with a free room at the motel, hoping their presence would lower the crime rate.

The promotion that evening was provided through a local radio station, which had placed a remote broadcasting site in the parking lot on the property, next to the motel. Small prizes were advertised, as well as a national broadcasting promotion for a chance to win $100,000. Disc jockeys played music through large speakers in the parking lot, luring those within earshot and those listening over the radio to come to the bar to win a prize. People were waiting in line for their chance to win, and those who won smaller prizes were waiting in line to collect their prizes. At least one witness described the bar as "packed." No doorman was present to screen the entry of patrons.

Lesesne owns several restaurants at which alcohol is also served. A policy manual for The Watering Hole stated a "policy to provide a safe and controlled area for patrons' entertainment and alcohol beverage consumption." Furthermore, the stated policy was to "prevent any customer from becoming intoxicated." According to the policy and Lesesne, the bar provided "FREE protein enriched food in the bar area for our patrons" to prevent them from becoming intoxicated by drinking alcoholic beverages on an empty stomach. Notwithstanding this policy, only two bartenders were on duty that night. No further security, such as doormen, "bouncers," or a wait staff, was provided.

Prior to the assault, Driggers was loud, obnoxious, aggressive, disheveled in appearance, glassy eyed, and "even a little intimidating." According to Jeffords' witnesses, it was obvious Driggers and his companion "had been drinking probably quite a while."

Based upon the above evidence, we conclude a factual issue was presented as to the negligence of Lesesne and his employees in creating a reasonably foreseeable risk of behavior such as the assault by Driggers. Even though the actual assault by Driggers may have been so swift that it could not have been stopped once it began, a factual issue is presented as to whether that type of criminal conduct was a foreseeable risk created by the place and character of Lesesne's business activities on that evening. If so, then a factual issue was

presented as to whether Lesesne's failure to take precautions or to provide a reasonably sufficient number of servants to afford a reasonable protection against such criminal conduct on the part of third persons constituted negligence proximately causing Jeffords' injuries. Therefore, we conclude the trial court erred in directing a verdict.

The touchstone of proximate cause in South Carolina is foreseeability of some injury from a defendant's acts or omissions. *Daniel*, 292 S.C. at 301, 356 S.E.2d at 134–35 (citing *Kennedy v. Carter*, 249 S.C. 168, 153 S.E.2d 312 (1967)). The standard by which foreseeability is determined is that of looking to the natural and probable consequences of the act complained of. *Id.* (citing *Young v. Tide Craft*, 270 S.C. 453, 242 S.E.2d 671 (1978)). It is not necessary that the actor must have contemplated or could have anticipated the particular event which occurred. *Id.* He may be liable for anything which appears to have been a natural and probable consequence of his negligence. "If the actor's conduct is a substantial factor in the harm to another, the fact that he neither foresaw nor should have foreseen the extent of harm or the manner in which it occurred does not negative his liability." *Id.* (quoting *Childers v. Gas Lines, Inc.*, 248 S.C. 316, 325, 149 S.E.2d 761, 765 (1966)). Ordinarily, the question of proximate cause is a jury issue. *Id.* (citing *Carter v. Anderson Mem'l Hosp.*, 284 S.C. 229, 325 S.E.2d 78 (Ct.App.1985)).

We conclude the *place* and the *character* of the activity was such as to raise a factual issue concerning the reasonable foreseeability of such conduct and the necessity of taking reasonable precautions, such as providing security or a reasonably sufficient number of servants, to afford protection.

In a light most favorable to Jeffords, The Watering Hole was in a high crime area, and a substantial part of the promotional activity was aimed at attracting bystanders who were within this area. Lesesne's written policies establish that they knew the consumption of alcohol raised safety concerns. *Cf. Callen*, 314 S.C. at 206, 442 S.E.2d at 218 ("Hardee's is a fast-food restaurant which serves no alcohol. It certainly does not fit the description of an operation which attracts or provides a climate for crime."). Not only was this spelled out in their manual, but specific dietary tactics were

adopted to minimize the effects of alcohol on people drinking on an empty stomach. Furthermore, in a light most favorable to Jeffords, the evidence as to the special promotion and the crowd lends itself to the inference that a more frenzied atmosphere was cultivated by Lesesne.

Perhaps most compelling is the evidence as to the condition of Driggers in the minutes prior to the assault. In a light most favorable to Jeffords, Driggers showed signs of intoxication, was obnoxious, and was aggressive for at least several minutes prior to the assault. Consequently, even though the actual manifestation of physical aggression may not have been foreseeable, the fact of the aggression was arguably a natural result of Lesesne's failure to provide sufficient personnel or security to control the premises and warn patrons.[1] *See Greenville Mem'l Auditorium,* 301 S.C. at 242, 391 S.E.2d at 546; *Daniel,* 292 S.C. at 300, 356 S.E.2d at 134 ("It is not required that notice to a proprietor regarding danger to a patron be long and continued in order to subject him to liability; it is enough that there be a sequence of conduct sufficient to enable him to act on behalf of his guest's safety.")

Based on the above, we conclude the trial judge erred in directing a verdict as to the negligence of Lesesne in creating a reasonably foreseeable risk of third party criminal conduct such as the assault of Driggers.

## CONCLUSION

For the foregoing reasons, the directed verdict of the circuit court is reversed, and the case is remanded for a new trial on those issues.[2]

**REVERSED.**

STILWELL and SHULER, JJ., concur.

---

1. Although the jury found that the defendants did not sell alcohol to Driggers when they knew or should have known him to be intoxicated, this is a separate issue from the negligence of defendants in creating a foreseeable risk of criminal acts such as those of Driggers when and if he became intoxicated.

2. Jeffords' two remaining issues on appeal allege trial errors which are not likely to come up again upon retrial. For that reason, we decline to address them.