**Margaret Jaccard RICHARDSON,**
**Appellant,**

v.

**QUIKTRIP CORPORATION,**
**Respondent.**

**No. WD 58884.**

Missouri Court of Appeals,
Western District,
En Banc.

March 29, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 2002.

Application for Transfer Denied
Aug. 27, 2002.

Donald Thomas Taylor, Kansas City, for Appellant.

Diana Moore Jordison, Kansas City, for Respondent.

Before PAUL M. SPINDEN, C.J., HAROLD L. LOWENSTEIN, ROBERT G. ULRICH, PATRICIA BRECKENRIDGE, JAMES M. SMART, JR., JOSEPH M. ELLIS, EDWIN H. SMITH, VICTOR C. HOWARD, THOMAS H. NEWTON, RONALD R. HOLLIGER, and LISA WHITE HARDWICK, JJ.

JOSEPH M. ELLIS, Judge.

On May 14, 1994, Margaret Jaccard Richardson was raped by an unknown assailant in the ladies' room of the QuikTrip Convenience Store at 7201 East Front Street in Kansas City, Missouri. On October 10, 1998, Ms. Richardson filed a Petition for Damages in the Circuit Court of Jackson County alleging that QuikTrip was negligent in disabling the restroom door lock, failing to provide adequate warning of the danger, and failing to provide other security measures to protect her. On October 7, 1999, QuikTrip filed a Motion for Summary Judgment asserting that it owed no duty to Ms. Richardson to protect her from the criminal acts of unknown third parties. On July 5, 2000, the trial court granted QuikTrip's Motion for Summary Judgment and entered judgment accordingly. Ms. Richardson (hereafter "Appellant") brings this appeal.

Our review of the trial court's decision to grant a motion for summary judgment is essentially *de novo,* and this court applies the same criteria as the trial court in determining whether summary judgment was properly granted. *Robinson v. Missouri State Highway & Transp. Comm'n,* 24 S.W.3d 67, 73 (Mo.App. W.D. 2000) (quoting *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993)). "Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law." *Id.* When considering appeals from summary judgments, we review the evidence and all reasonable inferences drawn therefrom in the light most favorable to the party against whom judgment was entered. *Id.* "Where the record reasonably supports any inference other than those necessary to support a judgment for the movant, a genuine issue of material fact exists and

the movant's motion for summary judgment should be overruled." *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 761 (Mo. banc 1996). Viewed in the light most favorable to Appellant, the facts of this case are as follows.

At all times relevant to this opinion, QuikTrip owned and operated a 24 hour convenience store/gas station located at 7201 East Front Street in Kansas City, Missouri ("the store").[1] The store was situated in a commercial area near the railroad tracks. Vagrants, bums and other non-customers would occasionally loiter on the premises.

QuikTrip provided restrooms for its patrons' use at the store. Prior to May 14, 1994, both the men's and women's restrooms at the store were accessible only from the outside through doors located on the side of the building.

Originally, the doors to the restrooms did not have locks. At some point, however, QuikTrip discovered that holes had been drilled in the stall partitions of the mens' restroom that were being used by an individual or individuals to watch customers as they relieved themselves. To protect its customers from this type of deviant criminal behavior, QuikTrip installed locks on the restroom doors that engaged whenever the doors were closed. As a result, customers were required to obtain a key from the store attendant in order to access the restrooms.

After the locks were installed, QuikTrip periodically experienced problems with customers walking off with the restroom keys. Eventually, the store supervisor and store manager tired of dealing with these inconveniences. They decided that the cheapest and easiest way to correct the problem was to remove the strikers from the locks so that the locks no longer func-

tioned and keys were no longer necessary. Acting upon this solution, the locks were disabled and rendered ineffective.

Subsequently, at approximately 2:30 a.m. on May 14, 1994, Appellant and Kirk Richardson stopped at the store. Appellant went to use the women's restroom. After Appellant entered the restroom, Mr. Richardson went into the store to get some cigarettes. Once inside the restroom, Appellant attempted to lock the door but was unable to do so because the striker had been removed from the lock. Appellant then went into the stall in the restroom. She tried to lock the stall door, but that lock also did not function. Shortly thereafter, a man entered the women's restroom, pushed in the stall door and raped Appellant.

On October 10, 1998, Appellant filed a Petition for Damages in the Circuit Court of Jackson County alleging that QuikTrip was negligent in disabling the restroom lock, failing to provide adequate warning of the danger, and failing to provide other security measures to protect her. On October 7, 1999, QuikTrip filed a Motion for Summary Judgment asserting that it owed no duty to Appellant to protect her from the criminal acts of unknown third parties. On November 3, 1999, Appellant filed her Response and Suggestions in Opposition to QuikTrip's motion claiming that the attack on Appellant was foreseeable and that QuikTrip had created a dangerous condition by disabling the restroom lock.

On July 5, 2000, the trial court granted QuikTrip's Motion for Summary Judgment and entered judgment against Appellant. The trial court found that no special relationship existed between Appellant and QuikTrip that would give rise to a duty to protect her from the criminal actions of an unknown third party and that she had

---

1. The store was subsequently relocated to a different property down the street.

failed to present sufficient evidence of "frequent and recent similar, violent crimes at Defendant's location" to give rise to a duty based on special circumstances.

On appeal, Appellant claims the trial court erred in finding that special circumstances did not exist; in relying solely on the number of prior violent crimes committed on the premises; and in failing to consider other evidence relevant to whether the attack on Appellant was foreseeable. Based on a series of cases from all three districts of this court, the trial court determined that only evidence of violent crimes on the premises could establish a duty on the part of QuikTrip, that no other evidence was relevant to determining whether an attack on Appellant was sufficiently foreseeable to give rise to such a duty, and that Appellant did not present evidence of a sufficient number of violent crimes at the convenience store to establish a duty on the part of QuikTrip. Appellant contends that the trial court should have considered other evidence she presented in determining whether the attack was foreseeable and that the evidence reflects that the attack on Appellant was sufficiently foreseeable to give rise to a duty on the part of QuikTrip.

■ "Generally, there is no duty to protect business invitees from the criminal acts of unknown third persons." *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. banc 1988). But Missouri case law has historically recognized exceptions to this rule which have arisen from "special relationships" or "special facts and circumstances." *Faheen v. City Parking Corp.*, 734 S.W.2d 270, 272 (Mo.

App. E.D.1987). Prior to 1988, cases addressing a business owner's duty to protect a business invitee from the violent criminal acts of unknown third parties[2] where no special relationship existed would find "special facts and circumstances" only where it was shown that frequent and recent occurrences of violent crimes by unknown assailants had occurred on the premises of the business. *See Id.; Warren v. Lombardo's Enters., Inc.*, 706 S.W.2d 286, 287 (Mo.App. E.D. 1986); *Brown v. National Supermarkets, Inc.*, 679 S.W.2d 307, 309 (Mo.App. E.D. 1987). Accordingly, where no special relationship existed and the third party was not known to the business owner, a duty could only be established if the plaintiff presented evidence that numerous, similar violent crimes had recently occurred on the premises. This has been referred to as the violent crimes exception. *Faheen,* 734 S.W.2d at 273.

■ In 1988, however, the Missouri Supreme Court revised these standards when it last addressed the issue of a business owner's duty to protect business invitees from third party criminal acts in *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 62 (Mo. banc 1988).[3] In *Madden,* the Court stated that, while there is generally no duty on the part of a business to protect business invitees from the criminal acts of unknown third persons, "a duty to exercise care may be imposed by common law *under the facts and circumstances of a given case." Id.* at 61 (emphasis added). The court went on to hold:

Consistent with the holding in *Virginia D. [ v. Madesco Inv. Corp.*, 648 S.W.2d

---

**2.** The cases also recognized an exception where the business owner was aware of the presence of the third party known to be violent by the business owner or who behaves in a manner indicating danger to business invitees, and the business owner had sufficient

time to prevent injury. *Faheen,* 734 S.W.2d at 273.

**3.** *J.M. v. Shell Oil Co.,* 922 S.W.2d 759, 761 n. 1 (Mo. banc 1996).

881 (Mo.banc 1983)], with the court of appeals decision in *Brown*, and with the rule established by the *Restatement of Torts*, the Court recognizes that business owners may be under a duty to protect their invitees from the criminal attacks of unknown third persons depending upon the facts and circumstances of a given case. The touchstone for the creation of a duty is foreseeability. A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. *Lowrey v. Horvath*, 689 S.W.2d 625, 627 (Mo. banc 1985).[4]

*Madden*, 758 S.W.2d at 62.

As noted by this court in *Becker v. Diamond Parking, Inc.*, 768 S.W.2d 169, 170–71 (Mo.App. W.D.1989), "[t]he essence of *Madden* is that a duty may arise whenever it is *foreseeable* that conduct of a known or unknown third person is *likely* to endanger the safety of a visitor." Such a duty may be imposed under the facts and circumstances of a given case. *Id.* at 170. Thus, *Madden* changed the focus of premises liability cases involving third party criminal acts to impose a duty when it is foreseeable under the facts and circumstances of the case that the conduct of a third person is likely to endanger the safety of a business invitee. *Id.* at 170–71.

Nevertheless, in 1993, the Eastern District of this court treated *Becker's* statements of law as dicta and held that *Madden* was merely restating the long-standing violent crimes exception. *Miller v. South County Ctr., Inc.*, 857 S.W.2d 507, 512 (Mo.App. E.D.1993). A year later, this court, relying on the Eastern District's decision in *Miller*, also treated *Becker's* declarations as non-binding dicta. *Schelp v. Cohen–Esrey Real Estate Servs., Inc.*, 889 S.W.2d 848, 851–52 (Mo. App. W.D.1994). These cases are incorrect for two reasons.

■ First, *Becker's* analysis cannot be deemed to be dicta. Obiter dicta, by definition, is a "gratuitous opinion." *Muench v. South Side Nat'l Bank*, 251 S.W.2d 1, 6 (Mo.1952). "[S]tatements ... are obiter dicta [if] they [are] not essential to the court's decision of the issue before it." *Campbell v. Labor & Indus. Relations Comm'n*, 907 S.W.2d 246, 251 (Mo.App. W.D.1995). In *Becker*, the trial court had granted summary judgment based upon the fact that the defendant had only presented evidence of one prior violent crime occurring on the premises, finding that evidence of numerous violent crimes was necessary to invoke the special circumstances exception. *Becker*, 768 S.W.2d at 170. In reversing the trial court's decision, the *Becker* court set forth the legal standard prescribed by *Madden* for determining whether a duty arose and applied the facts of the case to that standard to reach its decision. *Id.* at 170–71. Indeed, the court in *Becker* stated: "With the criteria for liability of a business owner set forth in *Madden*, this court holds that the trial court was in error when it granted defendant's motion for summary judgment." *Id.* at 170. Thus, the *Becker* court's analysis and application of *Madden* was integral to that decision. There is no rational or plausible basis for treating the *Becker* court's statements and declarations as obiter dicta.

Second, the language of *Madden* simply does not support the conclusion that the Supreme Court merely intended to restate the already well-established violent crimes standard. The language of *Madden* evinces the intent by the Supreme Court to impose a duty on business owners to

---

4. *Lowrey* involved the imposition of the rescue doctrine.

protect their invitees from reasonably foreseeable criminal attacks. In so doing, the court adopts what amounts to a totality of the circumstances approach.[5] The court clearly indicates that business owners will be held to have a duty to protect their invitees when the "facts and circumstances of a given case" establish that a criminal attack on the plaintiff was foreseeable. *Madden*, 758 S.W.2d at 62. In stating the duty of care, in its final sentence, the Court cites to a rescue doctrine case for the proposition that "[a] duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." *Id.* (citing *Lowrey v. Horvath*, 689 S.W.2d 625, 627 (Mo. banc 1985)).

In addition, and just as telling, the dissenting opinions in *Madden* reflect opposition based upon the fact that the Court was imposing a new duty upon business owners that had not been previously imposed under Missouri law.

> Today, "the Court recognizes that business owners may be under a duty to protect their invitees from the criminal attacks of unknown *third* persons depending upon the facts and circumstances of a given case." It must be conceded that the Court implants a duty on the part of business owners not heretofore raised by the law. In my view, the Court thereby *makes* the law and departs from the judicial process.

*Madden*, 758 S.W.2d at 66 (Donnelly, J. dissenting) (emphasis in original).

> On April 26, 1983, this Court tested the water on making Missouri citizens liable in damages for injuries inflicted by criminals to persons on their property. *Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881 (Mo. banc 1983). Virginia D. recovered damages for rape by an assailant in a hotel restroom. While the majority indicated that they were only enlarging "innkeeper's liability," the recovery was awarded, not to a guest of the hotel, but to a patron of Mrs. Hulling's restaurant, one of the building tenants.
>
> Today, all of the Missouri business community is clearly and unequivocally saddled with liability for criminal acts committed against persons on the property of the business. Every person in Missouri is going to find the cost of guards, security systems, and higher liability insurance premiums added to the cost of the groceries and products sold by the business establishments. All of this in addition to the taxes we pay to have the finest Highway Patrol, city and county police forces possible. As was suggested by Donnelly, J., if there be social policy or reason for making this change, it should be done by the legislature, not by the courts.

*Id.* at 66–67 (Welliver, J. dissenting). Such dissents would make no sense if the *Madden* majority were merely restating the existing violent crimes exception.

While the cases rejecting *Becker* and *Madden* have relied on the *Madden* Court's reference to *Brown v. National Supermarkets, Inc.*, 679 S.W.2d 307 (Mo. App. E.D.1984), an ordinary violent crimes exception case, to assert that *Madden* was not effecting any change from the prior violent crimes standard, *See Miller*, 857 S.W.2d at 511; *Schelp*, 889 S.W.2d at 852, those cases wholly ignore the Court's reference to the Restatement, *Virginia D.* and *Lowrey*. *Madden* cited to *Restatement (Second) of Torts, Section 344, Com-*

---

5. In his concurring opinion, Judge Robertson advocates the adoption of a balancing test, which was apparently rejected by the majori-ty. *Madden*, 758 S.W.2d at 65 (Robertson, J. concurring).

*ment f,* which provides that "*[if] the place or character of [a business owner's] business, or his past experience,* is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it." *Restatement (Second) of Torts, Section 344, Comment f* (emphasis added).[6] Comment f describes an approach that considers more than merely prior violent crimes occurring on the premises. The factors to be considered under Restatement § 344 include the nature of the business location, the character of the business, and past crimes in the area. *MacQuarrie v. Howard Johnson Co.,* 877 F.2d 126, 130 (1st Cir.1989). A totality of the circumstances approach is consistent with *Restatement (Second) of Torts, Section 344, Comment f. 62A Am. Jur.2d Premises Liability § 520.*

The *Madden* Court also stated that its decision was consistent with the holding of *Virginia D.* While the court in *Virginia D. v. Madesco Investment Corp.,* 648 S.W.2d 881, 887 (Mo. banc 1983), found an innkeeper/guest relationship existed in that case and therefore applied a different standard of care,[7] the Court assessed the foreseeability of criminal acts by examining the totality of the circumstances. The Court considered the location of the restroom where the sexual assault occurred, the poor design of the restroom, and the fact that "there were problems with young men or boys who gathered in the lower lobby as often as two or three times a week and who probably vandalized the men's room" in determining that sufficient evidence existed to alert management to the possibility of crime on the premises and invoke the duty to protect guests. *Id.* at 888. The Court found that criminal acts were foreseeable in a basement restroom despite the fact that there was "no evidence of recent incidents of rape, assault,

6. The Restatement (Second) of Torts § 344 provides:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
(a) discover that such acts are being done or are likely to be done, or
(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.
Comment f provides:
Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has

no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

7. The plaintiff in *Virginia D.* was having dinner at a restaurant that leased space from the defendant hotel. Because the restaurant did not have a restroom of its own, the plaintiff entered the hotel and went to a women's restroom in the hotel where she was sexually assaulted. The Court held that the innkeeper/guest relationship "extends to patrons of separately owned and operated eating establishments in a situations such as this one, in which the restaurants are an integral part of the hotel operation and are accessible through the hotel lobby." *Virginia D. v. Madesco Inv. Corp.,* 648 S.W.2d 881, 886 (Mo. banc 1983).

robbery or other violent crime in or near the hotel ... [n]or was there any evidence of previous criminal activity or violence in the lower level ladies' room." *Id.* at 884. The Court stated, "There is no requirement that there be at least one mugging or rape before the innkeeper is obliged to consider the possibility." *Id.* at 887.

In light of the unambiguous and unequivocable language of *Madden*, the lack of any reference to the violent crimes exception, and the Court's reliance on Restatement § 344 and *Virginia D*, there is simply no rational basis for suggesting that *Madden* merely restated the already established violent crimes exception.[8]

■ By stating that a duty would be imposed where a criminal attack was foreseeable under the facts and circumstances of the case, the Missouri Supreme Court in *Madden* adopted a totality of the circumstances approach for determining the duty owed by a business owner to a business invitee to protect the invitee from the criminal acts of unknown third parties.[9]

**8.** In *Aaron v. Havens*, 758 S.W.2d 446, 447 (Mo. banc 1988), the Missouri Supreme Court cited to *Madden* and *Virginia D.* in noting that "[t]he abstract proposition that there is no duty to protect against criminal misconduct is substantially attenuated in several recent cases." "To find a duty only the incidence of harm, not necessarily the quantum, need be foreseeable." *Id.* at 448.

In his dissent in *Aaron*, Judge Robertson noted that in *Madden* the court "found a duty of care in the proprietor of a business to protect invitees from foreseeable criminal acts of third parties." *Id.* at 451. Judge Robertson expressed his opinion that the business-invitee relationship was a special one that justified the imposition of this duty under some circumstances and that he did not believe that the landlord-tenant relationship rose to the same level. *Id.* He noted that under *Madden* for business owners "'[a] duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury.'" *Id.* (quoting *Madden*, 758 S.W.2d at 62).

In analyzing *Aaron*, this court has stated, "We agree with plaintiffs that *Aaron* shows the court is willing to determine foreseeability from *all the circumstances* of the case, without rigidly adhering to the requirement that the landlord have knowledge of prior violent crimes on the premises." *Kopoian v. George W. Miller & Co.*, 901 S.W.2d 63, 70 (Mo.App. W.D.1995) (emphasis in original). This case law further supports the conclusion that the prior violent crimes exception has been abandoned in favor of the totality of the circumstances standard.

**9.** Despite the Missouri Supreme Court's statements in *Madden* and its apparent willingness to consider all of the circumstances in accessing the foreseeability of criminal acts, the majority of subsequent cases in the Missouri Court of Appeals have ignored *Madden* and followed prior case law indicating that only evidence of recent occurrences of violent crime on the premises of the defendant were relevant to determining whether criminal acts on the premises were foreseeable. *See L.A.C. v. Ward Parkway Shopping Ctr. Co.*, 2001 WL 376347 (Mo.App. W.D. Apr.17, 2001); *Moreland v. Farren–Davis*, 58 S.W.3d 5 (Mo.App. W.D.2001); *Hudson v. Riverport Performance Arts Ctr*, 37 S.W.3d 261 (Mo.App. E.D.2000); *Smoote v. Sinclair Oil Corp.*, 1999 WL 1219882 (Mo.App. E.D.1999); *Knop v. Bi–State Dev. Agency of Missouri–Illinois Metro. Dist.*, 988 S.W.2d 586 (Mo.App. E.D.1999); *Wood v. Centermark Properties, Inc.*, 984 S.W.2d 517 (Mo.App. E.D.1998); *Groce v. Kansas City Spirit, Inc.*, 925 S.W.2d 880 (Mo. App. W.D.1996); *Bowman v. McDonald's Corp.*, 916 S.W.2d 270 (Mo.App. W.D.1995); *Schelp v. Cohen–Esrey Real Estate Servs., Inc.*, 889 S.W.2d 848 (Mo.App. W.D.1994); *Claybon v. Midwest Petroleum Co.*, 819 S.W.2d 742 (Mo.App. E.D.1991); *Keenan v. Miriam Found.*, 784 S.W.2d 298 (Mo.App. E.D.1990). These cases held that evidence of non-violent crimes on the premises and evidence of violent crimes in the immediate vicinity could not be considered in determining whether violent criminal actions were foreseeable. Some cases even went so far as to exclude evidence of crimes occurring outside the building from consideration in cases involving criminal acts against the plaintiff inside the building and vice versa. *Pickle v. Denny's Rest., Inc.*, 763 S.W.2d 678, 681 (Mo.App. W.D.1988); *Hudson v. Riverport Performance*

*Madden,* 758 S.W.2d at 62. This approach is consistent with the standard applied in the majority of other jurisdictions that have addressed the issue. *Posecai v. Wal–Mart Stores,* 752 So.2d 762, 767 (La.1999); *See Foster v. Po Folks, Inc.,* 674 So.2d 843, 844 (Fla.Dist.Ct.1996); *Hills v. Bridgeview Little League Ass'n,* 195 Ill.2d 210, 253 Ill.Dec. 632, 745 N.E.2d 1166, 1188 (2000); *Ellis v. Luxbury Hotels, Inc.,* 716 N.E.2d 359, 360–61 (Ind.1999); *Gragg v. Wichita State Univ.,* 261 Kan. 1037, 934 P.2d 121, 129 (1997); *Clohesy v. Food Circus Supermarkets, Inc.,* 149 N.J. 496, 694 A.2d 1017, 1022 (1997); *Collins v. Down River Specialties, Inc.,* 128 Ohio App.3d 365, 715 N.E.2d 189, 191 (1998); *Jeffords v. Lesesne,* 343 S.C. 656, 541 S.E.2d 847, 850 (Ct.App.2000); *Knoll v. Board of Regents of the Univ. of Neb.,* 258 Neb. 1, 601 N.W.2d 757, 764 (1999); *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 899 P.2d 393, 399 (1995); *Scialabba v. Brandise Constr. Co.,* 112 Nev. 965, 921 P.2d 928, 931 (1996); *Stanton v. Univ. of Maine Sys.,* 773 A.2d 1045, 1049 (Me.2001); *Luisi v. Foodmaster Supermarkets, Inc.,* 50 Mass.App.Ct. 575, 739 N.E.2d 702, 704 (2000); *See also Taco*

*Bell, Inc. v. Lannon,* 744 P.2d 43, 48 (Colo. 1987) ("Simply because something has not yet happened does not mean that its happening is not foreseeable. Instead, foreseeability is based on common sense perceptions of the risks created by various conditions and circumstances.").[10]

" '[T]he modern trend holds that foreseeability of a violent crime being perpetrated on a patron is not absolutely dependent upon notice of prior crimes of a similar nature occurring on or near the premises, but may also be determined from all of the circumstances present.' " *Scialabba,* 921 P.2d at 931 (quoting *Doud v. Las Vegas Hilton Corp.,* 109 Nev. 1096, 864 P.2d 796, 799–800 (1993)).[11] This general trend away from the simplistic and subjective prior criminal incidents approach is based upon the general perception that it is "fatally flawed" because (1) it leads to results contrary to public policy by discouraging landowners from taking adequate measures to protect premises known to be dangerous, (2) initial victims who are denied recovery are treated differently from subsequent victims even if

Arts Ctr., 37 S.W.3d 261, 265 (Mo.App. E.D. 2000); *Bowman v. McDonald's Corp.,* 916 S.W.2d 270, 278 (Mo.App. W.D.1995); *Wood v. Centermark Properties, Inc.,* 984 S.W.2d 517, 525 (Mo.App. E.D.1998). To the extent that *L.A.C., Moreland, Groce, Bowman,* and *Pickle,* all decided by this court, are inconsistent with *Madden, Becker,* and this opinion, they are overruled. As to those cases cited in this note decided by the Eastern and Southern districts of the Court of Appeals, to the extent that they are inconsistent with *Madden, Becker* and this opinion, we decline to follow them.

10. Other jurisdictions have adopted a balancing approach to replace the prior criminal incidents test for determining the duty of business owners to protect customers from foreseeable criminal activity. *See McClung v. Delta Square Ltd. P'ship,* 937 S.W.2d 891, 902–03 (Tenn.1996); *Ann M. v. Pacific Plaza Shopping Ctr.,* 6 Cal.4th 666, 25 Cal.Rptr.2d

137, 863 P.2d 207, 215 (1993); *Posecai v. Wal–Mart Stores,* 752 So.2d 762, 768 (La. 1999).

11. Certainly, some other jurisdictions have clung to the prior crimes exception. *See Doe v. Wal–Mart Stores, Inc.,* 198 W.Va. 100, 479 S.E.2d 610, 616 n. 2 (1996); *Raider v. Greyhound Lines, Inc.,* 94 Wash.App. 816, 975 P.2d 518, 519 (1999). However, even some of those jurisdictions consider evidence of criminal acts occurring beyond the bounds of the premises and non-violent criminal acts in assessing the foreseeability of violent crimes occurring on the premises. *See, e.g., Novikova v. Greenbriar Owners Corp.,* 258 A.D.2d 149, 694 N.Y.S.2d 445, 446 (N.Y.App.Div. 1999) (noting that criminal activity relied upon to establish foreseeability does not need to have occurred on the same premises nor does it need to be the same type of criminal conduct).

the attacks are equally foreseeable, (3) limiting evidence of foreseeability to prior similar criminal acts leads to arbitrary results and distinctions, and (4) the rule erroneously equates foreseeability of a particular act with previous occurrences of similar acts. *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 899–900 (Tenn.1996) (quoting *Isaacs v. Huntington Mem'l Hosp.*, 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653, 658–59 (1985)).

In *Madden*, our Supreme Court recognized that the simplistic approach of relying solely upon the existence of prior violent crimes occurring on the premises to assess foreseeability, while disregarding other evidence relevant to the issue, leads to illogical and inequitable results. While previous, similar violent acts occurring on the premises may constitute the most compelling evidence that the criminal act giving rise to an action was foreseeable, and in many cases may be the only way for a plaintiff to sufficiently establish foreseeability, other types of evidence may be probative on this issue and, in certain instances, may be sufficient when all facts and circumstances are weighed together to establish the requisite level of foreseeability. The *Madden* Court's holding that the foreseeability of criminal acts is determined by all of the facts and circumstances of a given case, i.e. the totality of the circumstances, avoids the illogical and inequitable results that can occur with strict application of the violent crimes exception. It recognizes that there is no logical reason for the courts to put on blinders and ignore relevant evidence in assessing the duty of the business owner.[12]

■■■ With this understanding of our Supreme Court's most recent controlling decision dealing with the issues before us, we must now consider whether, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to Appellant, the attack on Appellant could be deemed sufficiently foreseeable under all the facts and circumstances of this case to impose a duty on QuikTrip. *Madden*, 758 S.W.2d at 62. Some of the relevant factors to be considered include the nature of the business location, the character of the business, and past crimes in the area.[13] *See* Restatement (Second) of

12. The concurring opinion acknowledges that *Madden* requires us to look at the "facts and circumstances of a given case" in determining the foreseeability of a third party criminal attack. *Concurring Op. at* 70. But it then incongruously asserts that certain facts and circumstances should not be considered in determining the foreseeability of injury. *Id. at* 71. But as the phrase clearly reflects, weighing "the facts and circumstances of a given case" to determine whether a criminal attack by an unknown third party is foreseeable involves considering *all of the facts and circumstances and weighing all of them together* to determine whether there is a foreseeable likelihood of harm or injury sufficient to give rise to a duty of care. *See Madden,* 758 S.W.2d at 62. The concurring opinion is unconvincing in trying to explain how weighing the facts and circumstances of the case differs from a totality of the circumstances approach.

The concurring opinion suggests that the nature of a business, its hours of operation, and its location are not facts or circumstances that have any bearing on whether a criminal attack against a patron is reasonably foreseeable. The fact is, however, that each of those matters may be a fact or circumstance in a given case and must be given appropriate consideration. But none of those factors individually establish foreseeability. Rather, they are merely a part of the facts and circumstances to be viewed and weighed on a case by case basis. To the extent the concurrence is saying those facts and circumstances cannot be considered, we disagree.

13. "The totality of the circumstances standard encompasses all the factors a reasonably prudent person would consider." *Clohesy v. Food Circus Supermarkets, Inc.,* 149 N.J. 496, 694 A.2d 1017, 1023 (1997). "[I]n determining whether the totality of the circumstances supports the imposition of a duty, a court

Torts § 344, Comment f; *MacQuarrie*, 877 F.2d at 130.

■■■■ With regard to past crimes on the premises and in the area, the record contains police reports indicating that two strong-arm robberies had occurred at the store in the three weeks prior to the attack on Plaintiff. The record also reflects that an armed robbery occurred about a year before the attack and that five larcenies and three incidents of vandalism had occurred over the previous five years. There is also evidence that a rape was reported at the truck stop across the street from QuikTrip a little over a year before the attack on Plaintiff. In addition, QuikTrip was aware that deviant criminal behavior had occurred in at least one of the restrooms. The evidence regarding the location of business reflects that the store was located in the city near the railroad tracks and a truck stop and that bums and vagrants would loiter on the property.

As to the nature of the business, QuikTrip was operating a 24 hour convenience store/gas station on the premises. Obviously, the nature of such a business and its hours of operation make it at least slightly more prone to be a target for criminal activity. See *Cohen v. Southland Corp.*, 157 Cal.App.3d 130, 203 Cal.Rptr. 572, 578 (Cal.App.1984); *Hills v. Bridgeview Little League Ass'n*, 195 Ill.2d 210, 253 Ill.Dec. 632, ·745 N.E.2d 1166, 1188 (2000) (citing *Ann M. v. Pacific Plaza Shopping Ctr.*, 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 216 n. 8 (1993)) (noting that the character of some business establishments open to the public, such as a parking garage or an all-night convenience store, creates a special temptation and opportunity for criminal misconduct that helps give rise to and affects the scope of the duty to protect). Furthermore, the nature of the restroom itself, accessible at all hours through a door on the side of the building that cannot be locked and which is not visible to any of the employees, creates an environment that may well attract crime.

There is evidence from which it could be found that QuikTrip recognized the potential for criminal activity and responded by taking a number of security precautions.[14] QuikTrip installed an alarm system in the interior of the store. The store also installed surveillance cameras covering the interior of the store and the part of the outside lot on which the gas pumps were situated. But it provided no camera coverage for the rear of the store or the side of the store where the restrooms were located.

In addition, QuikTrip installed locks on the restroom doors to protect its customers after discovering that deviant criminal activity had occurred in at least one of the restrooms. It is reasonable to infer that such measures would not have been taken unless QuikTrip foresaw the potential for further criminal activity in the restrooms in the future.[15] The evidence reflects that

must look to 'all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents, to determine whether a criminal act was foreseeable.' " *Ellis v. Luxbury Hotels, Inc.*, 716 N.E.2d 359, 360–61 (Ind.1999) (quoting *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 972 (Ind.1999)).

**14.** "[G]enerally speaking, commercial establishments are well positioned 'to know the extent of crime on the premises * * * to take measures to thwart it and to distribute the costs' associated with providing security." *Hills v. Bridgeview Little League Ass'n*, 195 Ill.2d 210, 253 Ill.Dec. 632, 745 N.E.2d 1166, 1188 (2000) (quoting *McClung*, 937 S.W.2d at 903).

**15.** *See Lechmanski v. Marine Midland Bank*, 259 A.D.2d 966, 703 N.Y.S.2d 612, 613–14 (N.Y.App.Div.1999) ("In opposition to the motion for summary judgment, plaintiff submitted evidence that a locking mechanism on the

the subsequent disabling of those locks was performed for the convenience of QuikTrip and its employees and not because the potential for criminal activity had abated.

 Moreover, the assistant manager for the store testified that for safety reasons, as a matter of store policy, employees were not allowed to take the trash out to the dumpster behind the store at night. QuikTrip's policy of restricting employees from going around to the back of the store where there were no surveillance cameras supports an inference that it recognized additional danger of a criminal attack on portions of the property where no security

devices were installed. On the whole, the evidence of the security measures taken by QuikTrip, while not giving rise to an assumed duty in and of itself,[16] further supports the conclusion that QuikTrip recognized the potential for criminal attack on its property.[17]

Viewing the evidence in the light most favorable to the Appellant, we find that under the facts and circumstances of this case it was foreseeable that an unwelcome individual would enter the women's restroom while it was occupied by a lone woman and attack her.[18] Consequently, QuikTrip had a legal duty to take reasonable precautions to avoid such attacks.[19]

vestibule door, which is designed to allow access to the vestibule only by persons with ATM cards, had been broken for at least a year.... The fact that defendant installed a locking mechanism on the vestibule door for the protection of patrons who utilized the ATM after the bank was closed raises a factual issue whether the attack on plaintiff was foreseeable, rather than merely conceivable. Plaintiff's evidence that defendant allowed the lock to remain in a broken condition for at least a year raises a further factual issue whether defendant took reasonable precautions to secure its premises.'').

16. Under current Missouri law, "[t]o establish a business assumed a duty to protect their invitees against actions of third parties, there must be a showing that there was an express assurance of safety to the invitee and the invitee relied on those assurances." *Hudson v. Riverport Performance Arts Centre*, 37 S.W.3d 261, 266–67 (Mo.App. E.D.2000).

17. See *Lechmanski v. Marine Midland Bank*, 259 A.D.2d 966, 703 N.Y.S.2d 612, 613–14 (N.Y.App.Div.1999)

18. The Nebraska Supreme Court reached a similar conclusion in *Gans v. Parkview Plaza Partnership*, 253 Neb. 373, 571 N.W.2d 261 (1997). In *Gans*, the court found that an attack on a lone female was foreseeable where the property owner "knew, or should have known, that the secluded location of the office building at the end of a dead-end street presented an easy target for criminal activity"

and that the lock on suite often occupied by women at night could not be operated from the inside even though the property owner did not have knowledge of any prior criminal activity on the premises aside from a single burglary. *Id.* at 268–69.

19. Contrary to the concurring opinion's assertions, nothing in this opinion can or should be read to imply that mere operation of an allnight business makes criminal attacks against patrons by unknown third parties sufficiently foreseeable to give rise to a duty, nor does this opinion hold that a duty could arise if there were no history of crime in the area in which the business was located. This court has merely applied the applicable standard of review, weighed all of the facts and circumstances in accordance with that standard of review, and determined that under all of the facts and circumstances a criminal attack by an unknown third party was sufficiently foreseeable to give rise to a duty on the part of Quiktrip.

We also take issue with the concurring opinion's claim that we are adopting a totality of the circumstances approach that has not been approved by our Supreme Court and that it is inappropriate to do so. As we have acknowledged throughout, we view the phrase "totality of the circumstances" as identical to, and interchangeable with, the phrase "the facts and circumstances of a given case" as used by the Supreme Court in *Madden*. Accordingly, we are not adopting something that has not been approved by the

Having found that QuikTrip had a duty to protect Appellant, as a business invitee, against criminal acts from unknown third persons under the facts and circumstances of this case, there remain genuine issues of material fact to be decided. Accordingly, the trial court's grant of summary judgment in favor of QuikTrip is reversed and the case is remanded for further proceedings consistent with this opinion.

LOWENSTEIN, BRECKENRIDGE, NEWTON, HOLLIGER and HARDWICK, JJ., concur.

SPINDEN, C.J., concurs in separate opinion filed.

ULRICH, SMART, SMITH and HOWARD, JJ., concur in opinion of SPINDEN, C.J.

PAUL M. SPINDEN, Chief Judge.

The majority correctly concludes that QuikTrip Corporation owed a duty of reasonable care to Margaret Richardson. The majority reaches the right result, but it does so on a "shotgun" analysis, calling it a "totality of the circumstances approach," that is simultaneously too narrow and too broad. I write separately to identify the precise reason for my concurrence.

Because QuikTrip Corporation had "thrown open" its restrooms for the public's use, Richardson was QuikTrip's invitee when she entered the restroom on May 14, 1994. *Carter v. Kinney*, 896 S.W.2d 926, 928–29 (Mo. banc 1995). Having invited Richardson to use its restroom, QuikTrip was obligated to use reasonable care to protect her from dangers, *id.* at 928, but it was not obligated to protect her from dangers of every kind. Its obligation was to guard her only from those dangers that

arose from hidden pitfalls and dangers not open and glaring, *Fisher v. Northmoor United Methodist Church*, 679 S.W.2d 305, 306 (Mo.App.1984), and from dangers arising from special circumstances. *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 62 (Mo. banc 1988).

Because, in the ordinary course of matters, a business owner has no duty to protect his invitees from unknown third persons' criminal attacks, *id.* at 61, Richardson was obligated to establish an exception to this rule to make a submissible case against QuikTrip. "[B]usiness owners may be under a duty to protect their invitees from the criminal attacks of unknown third persons depending upon the facts and circumstances of a given case." *Id.* at 62

Richardson averred "special circumstances" in her petition. She alleged "that [QuikTrip] knew or should have known that the lock to [QuikTrip's] women's restroom was disabled thus creating a dangerous condition that directly caused [Richardson's] injury[.]"

That the lock on the women's restroom door was disabled did not alone create a special circumstance. That the restroom door could not be locked was not a hidden defect or hidden pitfall. Not only was it open and obvious, Richardson acknowledged in her deposition testimony that she was aware that the lock on the women's restroom did not work, yet she decided to use the restroom anyway.

QuikTrip may have created the pitfall by disabling the lock, but it was a pitfall of which Richardson was aware, considered, and decided to chance. Richardson indeed appreciated the situation as a peril—as would any reasonable person employing all

Missouri Supreme Court. To the contrary, it is our intention to carry out our constitutional duty to follow the most recent controlling decision of our Supreme Court. *Schumann v. Missouri Highway & Transportation Comm'n*, 912 S.W.2d 548, 552 (Mo.App. W.D.1995).

of her faculties. Simple fairness would dictate that QuikTrip should not be liable on this ground. The law demands that a property owner act only in the case of hidden traps that are not obvious to its invitees. *Workes v. Embassy Food Enterprises, Inc.*, 592 S.W.2d 864, 867–68 (Mo. App.1979).[1]

The majority fails to make this distinction. It does not recognize that an invitee has a responsibility to use his or her faculties to avoid open and obvious traps and pitfalls. Its opinion suggests that it would be willing to conclude that QuikTrip had a duty to put a lock on the bathroom door even had QuikTrip not experienced a problem in the restroom. The majority's focus in this regard is too narrow.

But I concur in result because of the presence of a countervailing factor. QuikTrip had experienced a significant problem with criminal behavior in its restrooms. This problem had caused it to install locks on its restrooms doors to thwart this criminal behavior. QuikTrip should have realized that its invitees would be unaware of this problem and would be unable to factor the matter into their decision as to whether to use a restroom whose door could not be locked. This problem with criminal behavior in the restroom created a special circumstance. QuikTrip knew, or should have known, that this problem—presumably unknown to Richardson and Quik-

Trip's other invitees—heightened the risk of using QuikTrip's restrooms beyond what would otherwise be obvious to Richardson. Given its superior knowledge of this risk, it owed a duty to Richardson, its invitee, that it would not have had in other, more ordinary circumstances.

QuikTrip had a duty to take reasonable steps to protect Richardson when it realized, from what it had observed from past experience, that the criminal conduct of third persons posed a danger to its invitees. Action is required only if a business owner has reason to anticipate the danger, and, in the typical case, if nothing gives rise to such an anticipation, a business owner is not obligated to act. *Madden*, 758 S.W.2d at 62. Usually a warning will be sufficient unless it is apparent that, either because of a lack of time or because of the character of the anticipated danger, a warning would be ineffective. QuikTrip did anticipate danger, as indicated by its putting locks on its restrooms doors. Unfortunately, it later disabled those locks—not because it perceived the danger to have eviscerated, but because customers failed to return the keys enough times that QuikTrip became frustrated. In light of these facts, I conclude that QuikTrip had a duty to take reasonable steps to at least warn Richardson of the danger posed by the use of its restrooms.[2]

---

1. As this court's Eastern District noted in Workes, " 'The owner or occupant of land is not an insurer of the safety of even a business invitee. The true basis of the owner's or occupant's liability is his superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know. Thus the alternative duty to keep the premises in a reasonably safe condition for an invitee or to warn him of the dangerous condition applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like, in that they are known to the inviter but not known to the invitee, and would not be ob-

served by the latter in the exercise of ordinary care. And where the condition relied on is so open and obvious that it is or should be as apparent to the invitee as it is to the owner or occupant there is no duty on the latter to warn the invitee of the condition, and he is not liable for injuries resulting from such an open and obvious condition.' " 592 S.W.2d at 867–68 (quoting *Moran v. Hartenbach*, 423 S.W.2d 53, 56 (Mo.App.1967)).

2. The question of duty in a negligence case is purely an issue of law to be decided by this court and not by the trier of fact. *Lopez v. Three Rivers Electric Cooperative, Inc.*, 26

I perceive that the majority does not disagree with this rationale. Yet it goes well beyond this simple, straightforward analysis firmly supported by caselaw to adopt what it calls the "totality of the circumstances approach," an approach that no Missouri court has employed.

In deciding whether this case presented a special circumstance exception to the general rule of no duty to protect an invitee from a third person's criminal attack, the majority declares that, in addition to the factors that I noted above, it must consider QuikTrip's location near railroad tracks and a truck stop, that bums and vagrants [3] loitered on the premises, and that it sold gasoline and groceries all night.

The majority clarifies that none of these factors alone would be sufficient to create duty. Tucked away in a footnote, after emphasizing these factors in the opinion's text, is this qualification:

[N]othing in this opinion can or should be read to imply that mere operation of an all-night business makes criminal attacks against patrons by unknown third parties sufficiently foreseeable to give rise to a duty, nor does this opinion hold that a duty could arise if there were no history of crime in the area in which the business was located.

Majority op. at 66 n. 19. This is reassuring, but not assuring enough given the majority's reliance and approval on cases that say the opposite. For example, it cites with approval *Cohen v. Southland Corporation*, 157 Cal.App.3d 130, 203 Cal. Rptr. 572, 578 (1984), in which the California Court of Appeals said, "In the very operation of an allnight [sic] convenience store, defendants may be said to have created 'an especial temptation and opportunity for criminal misconduct,' thus increasing the foreseeability of injury resulting from third party misconduct in the early morning hours." [4] The majority's text

---

S.W.3d 151, 155 (Mo. banc 2000). Whether QuikTrip breached its duty and whether the breach caused Richardson's injuries are questions of fact for the fact finder. *Alcorn v. Union Pacific R.R. Co.*, 50 S.W.3d 226, 238–39 (Mo. banc 2001).

3. The evidence does not establish that bums and vagrants were on QuikTrip's property. The evidence that the majority relies upon to support this statement comes from the deposition testimony of Chris McKenzie, QuikTrip's facility support technician. Richardson's attorney asked McKenzie, "I have been told from hearsay ... that there were individuals hanging around this particular QuikTrip that, I don't necessarily want to use the term bum per se or vagrant but someone who was hanging around and they weren't welcome and was asked to leave by the QuikTrip employees around this time period. Do you have any knowledge concerning any such type of persons who were loitering around that store during that time period?" McKenzie responded, "I'd probably seen a couple at times but you'd see them, not at all stores but you'd see them. There was never any trouble down

there so you just don't pay attention to it." From this evidence, the majority concludes that bums and vagrants loitered on the premises. Maj. op. at 65. I fail to see the evidentiary basis for this conclusion.

4. The Cohen's court reasoning was spurious. It was relying on Professor Prosser's Handbook of the Law of Torts § 33 at 174 (4th ed.1971), which was, in turn, relying on Restatement (Second) of Torts § 302B (1965). Section 302B says, "An act or an omission may be negligent if the actor realizes or should realize that it involves an *unreasonable* risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." (Emphasis added.) The Restatement makes clear what it deems to be an unreasonably risky situation in its illustration: "A leaves dynamite caps in an open box next to a playground in which small children are playing. B, a child too young to understand the risk involved, finds the caps, hammers one of them with a rock, and is injured by the explosion. A may be found to be negligent toward B." (Note the emphasis of a child

cites *Cohen* with approval, but it then confusingly endeavors in Footnote 19 to distance itself from *Cohen.*

The majority's emphasis of these factors creates a problem for future cases. Although the majority assures in a footnote that it does not intend to do so, its opinion leaves open the door to a future plaintiff's arguing that an all-night convenience store located across the street from a truck stop and near railroad tracks is a special circumstance even if the store has not experienced the kind of criminal problems outlined in *Madden.* But what makes the majority's discussion so objectionable is that it takes its position unnecessarily. The outcome of this case would be the same even had the majority mentioned none of these factors. What difference would it have made in this case had Quik-Trip operated its convenience store for 12 hours each day rather than all night? What difference would it have made had its store been located across the street from a church rather than a truck stop or near a walking path under a neighborhood watch rather than railroad tracks? It would have made no difference because those factors were not significant. The majority all but acknowledges as much. Majority op. at 66–67 n. 19.

In *Madden,* the Supreme Court adopted something that resembles the majority's totality of the circumstances approach. Perhaps, the Supreme Court's use of the words, "facts and circumstances," confuses the majority, especially as it reads the opinions of other jurisdictions, but the Supreme Court's analysis in *Madden* is quite distinct from the majority's "totality of the circumstances approach." In *Madden,* the Supreme Court held:

Consistent with the holding in *Virginia D.* [*v. Madesco Investment Corporation,* 648 S.W.2d 881 (Mo. banc 1983)], with the court of appeals decision in *Brown* [*v. National Supermarkets, Inc.,* 679 S.W.2d 307 (Mo.App.1984)], and with the rule established by the *Restatement* [*(Second)*] *of Torts,* [§ 344 (1965),] the Court recognizes that business owners may be under a duty to protect their invitees from the criminal attacks of unknown third persons depending upon the facts and circumstances of a given case. The touchstone for the creation of a duty is foreseeability. A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury.

758 S.W.2d at 62. The phrase "facts and circumstances of a given case" seems, on a casual reading, to be consistent with "totality of the circumstances." It is not.

In *Madden,* the Supreme Court did not rest duty "upon the facts and circumstances of a given case." After noting that imposition of duty would depend on the facts and circumstances of a given case, the Supreme Court added, "The touchstone for the creation of a duty is foreseeability. A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." *Id.* Hence, to establish a circumstance that gives rise to a duty to protect, a plaintiff must establish that the defendant (1) could foresee that (2) particular acts or omissions would (3) cause harm or injury.

One is deemed to foresee that which he or she knows or should know. " 'The foundation of liability for negligence is knowl-

---

who does not understand the risk involved.) I am dubious that all-night convenience stores, any more than all-night grocery stores or any of the other numerous businesses that

remain open all night, are like the dynamite caps and are unreasonably risky. The California court simply did not seem to understand the concept.

edge—or what is deemed in the law to be the same thing: opportunity by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury.'" *Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc.,* 700 S.W.2d 426, 431–32 (Mo. banc 1985) (quoting 57 Am.Jur.2d *Negligence* § 54 (1971)). Typically, one gains knowledge from experience and past occurrences, and, indeed, that is precisely what the Supreme Court emphasized in *Madden.*[5]

The Supreme Court noted that "special facts" in *Virginia D.* had given rise to duty to protect an invitee from an unknown third person's criminal attack. *Madden,* 758 S.W.2d at 62. The court described these special facts as "evidence of prior criminal incidents[.]" *Id.* The court also noted that "special facts" in *Brown* had given rise to a duty to protect patrons from unknown third parties' criminal assaults. *Id.* Those special facts were "sixteen reported robberies involving a firearm, seven reported strong arm robberies, and 136 other reported crimes allegedly occurring on the defendant's premises over a two year period[.]" *Id.*

In applying its rule to the plaintiffs' cases in *Madden,*[6] the Supreme Court emphasized past crimes. In one of the two combined cases, it noted that a defendant's restaurant had been "the scene of numerous violent crimes against persons during the three year period immediately preceding [the attack on the plaintiff]." *Id.* In the other case, the court emphasized the "history of prior crimes occurring on the

defendants' property." *Id.* at 63. Both plaintiffs in *Madden* complained of attacks on parking lots.

Had the Supreme Court been employing the majority's totality of the circumstances approach, one could surely presume that the court would have informed us of more about C & K Carryout Barbecue and the shopping center parking lot outside Schnuck's food market and Grandpa Pigeon's department store. The court does not speak of any factor—such as the nature of the businesses and their locations, whether bums and vagrants loitered near them, and whether they were open all night—other than past problems with crime. The only factor that the Supreme Court deemed to be salient in determining the significant "facts and circumstances of [the] given case" was the history of crime on the premises.

The majority also seems to misread *Virginia D.* as consistent with its totality of the circumstances approach. It correctly notes that the court considered the history of crime at a hotel where the plaintiff had been raped in the hotel's lobby restroom. It then seizes, out of context, the Supreme Court's comment, "There is no requirement that there be at least one mugging or rape before the innkeeper is obliged to consider the possibility." *Virginia D.,* 648 S.W.2d at 887. The Supreme Court made this statement while considering the special relationship between an innkeeper and an inn's guests. Indeed, the Supreme Court in *Madden* made this very distinction: "The recognition of a duty in *Virgi-*

---

5. I concur in the majority's analysis concerning the so-called violent crimes exception. To the extent that the majority is saying that a business owner's experience with past criminal activity should provide him with knowledge to make future criminal activity on his premises foreseeable and that Missouri courts have tended to be restrictive in which past criminal activity it will consider, I concur.

6. Madden was a combined case in which Opal Madden complained of a criminal attack on a restaurant's parking lot, and James Decker complained of a criminal attack on a shopping center parking lot.

*nia D.* was based in part on the existence of a special relationship between the plaintiff and the defendant, *i.e.*, innkeeper-guest[.]" 758 S.W.2d at 62. It was while discussing this relationship that the *Virginia D.* court noted that, because of the relationship, the hotel's not having experienced any rapes did not make a difference because there is no requirement that there be at least one rape before an innkeeper is obliged to act to protect.

But the salient portion of *Virginia D.*, as it pertains to QuikTrip, is the Supreme Court's analysis of the hotel's past problems. The Supreme Court noted the hotel's problems with prostitution and burglaries in its parking lot, thefts in its gift shop, and vandalism in a restroom were sufficient "to alert management to the possibility of crime on the premises[.]" 648 S.W.2d at 888.[7] This experience was a key component of the *Virginia D.* decision: "[I]t was ... based in part on the existence of special facts, *i.e.*, *evidence of prior criminal incidents* [.]" *Madden,* 758 S.W.2d at 62 (emphasis added).

The primary difficulty that I face in questioning the majority's totality of the circumstances approach is the support that the RESTATEMENT seems to lend to the majority's view and the Supreme Court's declaration that its holding in *Madden* was consistent "with the rule established by the *Restatement of Torts.*" 758 S.W.2d at 62. Earlier in *Madden,* the Supreme Court noted that the RESTATEMENT's § 344

"recognizes a duty on the part of a possessor of land who holds it open to the public for entry for business purposes to protect members of the public while they are on the land from the intentionally harmful acts of third persons or in the alternative to warn visitors so that they can avoid the harm." [8] *Id.* Comment f of § 344 says, "If the place or character of [a land possessor's] business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." At first blush, it would seem that the RESTATEMENT is sanctioning consideration of the character of QuikTrip's business as an all-night convenience store.

I first note that even the majority does not believe that this is the law. Although the majority's opinion, by its reliance on *Cohen* and other cases, strongly suggests that the mere status of being an all-night convenience store is sufficient to give rise to duty—see my discussion *supra* at 69—the majority desires to walk away from the position as inconsistent with the law. Majority op. 66–67 n. 19. But I would quickly add that I question whether the Supreme Court truly has adopted the total RESTATEMENT view. In *Madden,* the court described the "restatement approach:"

---

7. Usually the Supreme Court speaks of foreseeability in terms of probabilities and not possibilities. As it said recently in *Lopez,* 26 S.W.3d at 156, "For purposes of determining whether a duty exists, this Court has defined foreseeability as the presence of some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it."

8. Section 344 says, "A possessor of land who holds it open to the public for entry for his

business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to *exercise reasonable care* to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Under the restatement approach, this duty may arise when the landowner knows or has reason to know *from past experience* that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of visitors, even if the landowner has no reason to expect harmful conduct on the part of any particular individual. *Restatement (Second) of Torts, Section 344, Comment f.*[9]

Note that, although the Supreme Court was describing the "restatement approach" based specifically on Comment f, it ignored "the place or character of [a] business" and focused exclusively on "past experience."

More importantly, when the *Madden* court announced its holding, it declared that it was consistent with the RESTATEMENT's rule. This does not mean necessarily that it adopted § 344 and its comments as a correct statement of Missouri law. It meant only that the holding enunciated in *Madden* was not inconsistent with § 344, and indeed it is not. Because the Supreme Court was making a general holding, one could argue reasonably that had the Supreme Court desired to take as broad approach as the majority does, it would have emphasized in *Madden* more than evidence of prior criminal incidents. That it did not causes me to resist the majority's broad approach.

Moreover, I fear that the majority's totality of the circumstances approach, with its opening the door to such previously unconsidered factors as being an all-night convenience store, ends up being the exception that swallows the rule. Even the RESTATEMENT, in the very first sentence of Comment f to § 344 emphasizes, "Since the possessor is not an insurer of the visitor's safety, he is ordinarily under *no duty* to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur."[10] The majority's totality of the circumstances approach opens the door to imposing liability for the ordinary—operation of an all-night convenience store across the street from a truck stop near railroad tracks—rather than reserving the exceptions for the extraordinary as mandated by the RESTATEMENT. The practical effect of the majority's totality of the circumstances approach is to make a business entity an insurer for purposes of anticipation and avoidance.

Nonetheless—and this is key to my position—a broad approach is simply not necessary to deciding this case correctly. Applying the law in a simple, straightforward fashion leads to the correct result. I believe that this court, as an intermediate level appellate court and not a policy-making court, would be more attuned to its mission to leave to the Supreme Court the decision of whether to adopt a totality of the circumstances approach. Until such time as the Supreme Court declares clearly the majority's totality of the circumstances approach is the law of Missouri, I decline to join in such a notion.

ROBERT G. ULRICH, Judge, JAMES M. SMART, Jr., Judge, EDWIN H. SMITH, Judge, and VICTOR C. HOWARD, Judge, join in this opinion.

---

9. Emphasis added.

10. Emphasis added.